<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**EDITA APPLEBAUM,**

      **Plaintiff,**

**v.**

**WILLIAM P. FABIAN, LAURENCE W.**
**GOLD, LEAH E. CAPECE, EFRAIM**
**"FRANK" RAJS, CECILIA KEH,**
**THOMAS D'AMBROSIO, MAXINE**
**MELNICK, MICHAEL LACKEY,**
**GERALD MACKO, DEREK**
**SCHUMACHER, JIMMY SAMAYOA,**
**GARRETT APPLEBAUM, YOUSSEF**
**ABDULAH YOUSSEF, VOYA**
**FINANCIAL, INC., INTAC ACTUARIAL**
**SERVICES, INC., ASCENSUS LLC,**
**SUSAN BAUER, JOHN DOES 1-10, and**
**ABC CORPS. 1-10,**

      **Defendants.**

---

**Civil Action No. 18-11023 (KM) (JAD)**

**OPINION**

---

<u>**JOSEPH A. DICKSON, U.S.M.J.**</u>

This matter comes before the Court upon Plaintiff Edita Applebaum's cross-motion for leave to file a second amended complaint. (ECF No. 59). The Court conducted oral argument on August 12, 2019. (Tr. of Aug. 12, 2019 Hr'g, ECF No. 89). After carefully considering the parties' submissions and arguments, and for the reasons stated below, Plaintiff's cross-motion is **GRANTED IN PART AND DENIED IN PART**.

    **I.**    <u>**RELEVANT FACTS AND PROCEDURAL HISTORY**</u>

In this action, Plaintiff alleges that eleven employees of the Thomas Harris Company ("THC"), along with two professionals in the company's employ, engaged in a complex and

sustained conspiracy intended to prevent Plaintiff from obtaining the millions of dollars due her in accordance with her late husband's will, and that the conspirators instead used those funds for illicit purposes.  (*See generally* Compl., ECF No. 1).  Plaintiff contends that much, if not all, of THC's leadership took part in the conspiracy, which involved a slew of wrongful activities including bank fraud, payroll fraud, litigation fraud, mail fraud, and wire fraud.  (*Id.*).

### a.    First Amended Complaint

Plaintiff filed her First Amended Complaint on November 12, 2018.  (First Am. Compl., ECF No. 39).  That document, which spans 208 pages and includes eleven causes of action, remains Plaintiff's operative pleading in this matter.  The Court must summarize Plaintiff's existing allegations and claims in order to provide necessary background and context for Plaintiff's motion for leave to amend.  The Court stresses that the following is meant to provide an overview of Plaintiff's contentions, rather than an inventory.

Plaintiff's allegations focus on Defendant William Fabian, a longtime business associate of Plaintiff's late husband, Todd Harris Applebaum.  Fabian's connection to Mr. Applebaum appears to go back to at least the early 1990s, when Fabian claims to have loaned THC a sum of money.  (*Id.* at Preliminary Statement ¶ 8; Count 1 ¶¶ 139, 200).  Fabian further represents that he performed consulting work for THC, subject to a deferred compensation agreement, in the years prior to Mr. Applebaum's death.  (*Id.* at  Count 1 ¶ 36).  Mr. Fabian is also the executor of Mr. Applebaum's estate.  (*Id.* at Preliminary Statement ¶ 66).  THC's alleged indebtedness to Fabian plays a central role in Plaintiff's allegations.

### i.    THC's Dealings with Sun National Bank and Wells Fargo

After Mr. Applebaum died on November 4, 2012, THC continued doing business.  (*Id.* at Count 1 ¶ 18).  Defendant Frank "Efraim" Rajs became president of the company, and "place[d]

defendant Fabian on the THC payroll at a rate of two thousand dollars per week." (*Id.*). Between November 26, 2012 and December 14, 2012, THC made three withdrawals, totaling $420,000, from THC's line of credit with Sun National Bank. (*Id.* ¶ 27). Plaintiff alleges that THC (through Defendants Rajs, Fabian, and Cecilia Keh) did so by forging the late Mr. Applebaum's signature on certain documents. (*Id.* ¶¶ 19-23). Plaintiff contends that THC made those withdrawals in order to repay Defendant Fabian for his previous loans and consulting fees. (*Id.* ¶ 36).

On June 25, 2013, Sun National Bank filed a civil suit against THC, alleging that Mr. Applebaum's death was an "event of default" under the terms of the parties' agreement, that THC was therefore prohibited from taking additional advances under the line of credit, and that THC's withdrawals in November and December 2012 were fraudulent. (*Id.* ¶¶ 21-28). On June 27, 2013, THC personnel held a "crisis meeting", which Plaintiff attended, to discuss Sun National Bank's lawsuit and various other issues. (*Id.* ¶¶ 20, 47-52). During that meeting, Defendant Fabian allegedly provided THC with a "bailout" loan of nearly $300,000, subject to certain conditions, including a security interest in THC's accounts receivable and a personal guaranty from Plaintiff. (*Id.* ¶¶ 44-45). Fabian's "bailout" allegedly provided THC with additional funds necessary to settle the Sun National Bank lawsuit. (*Id.* ¶ 44). THC settled with the bank the following day. (*Id.* ¶ 41).

During the June 27, 2013 crisis meeting, THC personnel also addressed the company's application for an "emergency" $250,000 line of credit from Wells Fargo. (*Id.* at Preliminary Statement ¶ 26). Plaintiff contends that THC's leadership sought those funds "to repay [the company's] indebtedness to [D]efendant Fabian." (*Id.* at Count I, ¶ 113). Plaintiff alleges that certain defendants agreed to conceal important financial information from Wells Fargo,

including:  (1) THC's indebtedness to Defendant Fabian related to his circa-1990s loans and subsequent consulting work; (2) Defendant Fabian's more recent $300,000 "bailout" loan to THC; (3) Fabian's associated security interest in THC's accounts receivable; and (4) Plaintiff's personal guaranty of Fabian's "bailout' loan.  (*See, e.g.*, *id.* at Preliminary Statement ¶¶ 26-28; Count I ¶¶ 45-46).  Plaintiff further alleges that Defendants Capece and Fabian attempted to coerce Plaintiff to provide a personal guaranty in support of the Wells Fargo loan application and that she would not do so.  (*Id.* at Count I ¶¶ 53-58, 98-99).  Plaintiff declined to issue a guaranty because she believed that doing so would constitute "bank fraud" as she had already pledged her personal assets when guaranteeing Defendant Fabian's loan to THC.  (*Id.* ¶¶ 98-99).  Wells Fargo ultimately denied the loan, citing Plaintiff's refusal to provide a guaranty.  (*Id.* at Preliminary Statement ¶ 29, 32).

## ii.    **Plaintiff's Employment With THC**

Plaintiff alleges that THC hired her in December 2012, the month following Mr. Applebaum's death, so that she could "stay connected" to her late husband.  (*Id.* at Count IV, ¶¶ 3, 7).  Plaintiff had no formal title or duties.  (*Id.* ¶¶ 4-5).  Following the June 2013 "crisis" involving Sun National Bank, Plaintiff began working at THC daily, (*id.* ¶ 6), and lodged numerous "complaints" with THC personnel regarding fraud and mismanagement that she perceived within the company.  (*Id.* ¶ 24-28).  Plaintiff further alleges that in response to her "whistleblower activities", THC's leadership took steps to conceal the company's finances from her, (¶¶ 16-18), began retaliating against her, (*id.* ¶¶ 22-23), and ultimately fired her.  (*Id.* ¶¶ 27-34).  Plaintiff also contends that a group of "affiant" defendants (Lackey, Macko, Schumacker, Samayoa, Applebaum, and Youssef) later colluded with Defendants Capece, Fabian, and Rajs to create a series of frivolous affidavits intended to serve as a pretextual, post facto justification for

4

Plaintiff's termination.  (*Id.* ¶¶ 48-58).  Plaintiff further alleges that Defendants' decision to terminate her employment was also motivated, in part, by her refusal to provide a personal guaranty in support of THC's application for an "emergency" loan from Wells Fargo.  (*See, e.g. id.* ¶ 43).

### iii.    Alleged Misappropriation of Mr. Applebaum's 401K

Plaintiff alleges that her late husband maintained a 401(k) account, and that the account contained approximately $100,000 at the time of his death.  (*Id.* at Count 1 ¶ 229).  Plaintiff contends that, as Mr. Applebaum's surviving spouse, she was entitled to the full value of that account, (*id.* ¶ 230), and that Defendants Fabian and Keh nevertheless wrongfully caused those funds to be paid to Mr. Applebaum's Estate.  (*Id.* ¶ 233).  Plaintiff also contends that the companies that maintained and administered her late husband's 401(k) account, while not part of the THC employees' alleged conspiracy, erred by paying the funds in that account to Mr. Applebaum's Estate, rather than Plaintiff.  (*Id.*¶¶ 234-36).

### iv.    Alleged Payroll Fraud

Plaintiff alleges that several defendants engaged in "payroll fraud" by putting Mr. Fabian on the payrolls of both Toben Investments, Inc., a company in which Mr. Applebaum owned a 51% interest, and THC.  (*E.g.*, *id.* ¶¶ 18, 335, 361).  Plaintiff alleges that the salaries were not meant to compensate Mr. Fabian for any actual work he performed for those companies but, rather, served as another illicit means of repaying Fabian the sums THC allegedly owed him for loans and consulting fees.  (*Id.* ¶¶ 287-89, 293, 299, 361-69).

### v.    The "Linden Property"

Plaintiff contends that Toben Investments, Inc.'s sole asset was a lucrative commercial property located in Linden, New Jersey (the "Linden Property").  (*E.g.*, *id.* ¶¶ 339-52).  Plaintiff

alleges that, at the June 27, 2013 "crisis meeting", certain defendants decided to sell that property.  (*Id.* ¶ 375).  Plaintiff further alleges that an appraiser had valued the Linden Property at approximately one and a half million dollars in early 2014, (*id.* ¶ 339), and that Defendants nonetheless decided, under false pretenses, to sell it for half of that sum during a 2014 "fire sale." (*E.g.*, *id.* ¶¶ 37-76, 382).  Plaintiff contends that Defendants used the proceeds of that sale to reimburse Defendant Fabian for the loans and consulting services he allegedly provided to THC, (*id.* ¶¶ 375-79), and that they thereafter sought to create a pretext (i.e., that environmental damage would eventually render the property unrentable) to fraudulently justify that decision. (*Id.* ¶¶ 383-85).  Plaintiff alleges that, given her late husband's 51% interest in Toben Investments, Inc., which she will eventually inherit, Defendants' actions have caused her financial harm.  (*E.g.*, *id.* ¶ 15).

### vi.     Litigation in the Superior Court of New Jersey

Plaintiff commenced an action in the Superior Court of New Jersey in March 2014, filing a Verified Complaint and Order to Show Cause (the "State Court Litigation").  (*Id.* ¶ 237). Plaintiff alleges that the State Court Litigation, which continues to date, has involved extensive discovery, including more than a dozen depositions, thousands of interrogatories, and dozens of subpoenas and other discovery devices that have yielded production of over thirty thousand documents.  (*Id.* ¶¶ 238-39).  Plaintiff alleges that the parties to the State Court Litigation have also filed "numerous" applications in the Superior Court addressing, among other things, "requests for the removal of [D]efendant Fabian as executor [of the late Mr. Applebaum's estate], accounting and discovery-related issues, and motions for a distribution from the estate to plaintiff, who has received no formal distribution in six years of estate administration."  (*Id.* ¶¶ 240-41).

Plaintiff alleges that Defendants have used the State Court Litigation as a vehicle for continuing their conspiracy against her.  For instance, Plaintiff contends that Defendants have twice moved to "disinherit" her – requesting that the probate court force Plaintiff to sell her interest in THC to a third-party – based on the allegedly baseless affidavits described Section I(a)(ii), above.  (*Id.* ¶¶ 326-330).  Plaintiff alleges that Defendants sought that relief in retaliation for Plaintiff's whistleblowing activities and lawsuits.  (*E.g.*, ¶¶ 403-05).

Plaintiff further contends that certain Defendants have taken illicit actions during the State Court Litigation, with the objective of hiding evidence of their wrongdoing.  Plaintiff alleges, for example, that various defendants have filed a frivolous motion to quash a third-party subpoena, refused to produce documents unless Plaintiff had executed a "non-disclosure agreement", and committed perjury.  (*E.g.*, *id.* ¶¶ 258-68; 277-305; 436-39).

### vii.    <u>Plaintiff's Causes of Action</u>

Based on the foregoing factual allegations, Plaintiff has asserted eleven causes of action against Defendants.  While Plaintiff focuses the bulk of the pleading on her claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, she also brings claims for:  common law fraud (Count II); defamation (Count III); retaliation in violation of the New Jersey Conscientious Employee Protection Act (Count IV); common law negligence (Counts V, IX); violation of ERISA (Count VI); intentional infliction of emotion distress (Count VII); tortious interference with prospective economic advantage (Count VIII); and violation of the New Jersey RICO statute (Count XI).  Plaintiff has also asserted each of her substantive claims against fictional "John Doe" and "ABC Corp." defendants (Count X).

### b.   <u>Motion for Leave to File a Second Amended Complaint</u>

After Plaintiff filed her First Amended Complaint, several defendants filed motions to dismiss that pleading.  (ECF Nos. 53, 54).  Plaintiff thereafter filed a cross-motion for leave to file a second amended complaint.  (ECF No. 59).  Based on the Court's review of the "blacklined" version of Plaintiff's Proposed Second Amended Complaint ("PSAC"), that pleading appears to include all of the factual allegations and causes of action set forth in Plaintiffs' First Amended Complaint.  (*Compare* First Am. Compl., ECF No. 39 *with* PSAC, ECF No. 72).  Plaintiff also seeks to add or revise certain factual allegations contained in Counts I and VI, (PSAC at Count 1 ¶¶ 335-36; Count VI ¶¶ 8-12, ECF No. 72), include five new causes of action, (*id.* at Counts XII – XVI), and add Thomas S. Howard, Esq. (counsel representing Mr. Applebaum's Estate in the State Court Litigation), Gartenberg Howard LLP (Mr. Howard's law firm), and Morey La Rue, Inc. (the entity that sold the Linden Property to Toben Investments, Inc.) as defendants.  (*See generally* id.).

In her proposed Count XII, Plaintiff alleges that Defendant Fabian and proposed Defendant Howard are liable, pursuant to 17 C.F.R. § 240.10b-5, for their attempts to force Plaintiff to sell her interest in THC under false pretenses (described in Section I(a)(vi), above).  (*Id.* at Count XII ¶¶ 1-8).  In proposed Count XIII, Plaintiff alleges that Defendant Fabian breached his fiduciary duties as the executor of Mr. Applebaum's Estate by:  (1) seeking to force Plaintiff to sell her interest in THC; and (2) failing to pay Plaintiff any monies from that Estate.  (*Id.* at Count XIII ¶¶ 1-4).  Plaintiff's proposed Count XIV alleges that Defendants Rajs, Gold, Capece, the "affiant defendants", and proposed Defendant Howard "are liable for aiding and abetting defendant Fabian in his breach of his fiduciary duties as set forth in Count XIII."  (*Id.* at Count XIV ¶ 2).  Plaintiff's allegations on this point incorporate her previously pled contentions

of fraud, as set forth at length in Count I of Plaintiff's First Amended Complaint. (*Id.* at Count XIV ¶¶ 3-12). Plaintiff also alleges that proposed Defendant Howard is liable for aiding and abetting Fabian's conduct by engaging in fraudulent concealment, as she describes in proposed Count XV of her PSAC. (*Id.* ¶ 13).

In proposed Count XV, which accounts for the majority of Plaintiff's new factual allegations, Plaintiff alleges that proposed Defendant Howard is liable to her in tort for a series of fraudulent or otherwise erroneous filings or statements that Howard made before the Superior Court during the course of the State Court Litigation. (*Id.* at Count XV ¶¶ 2-58). Plaintiff further alleges that Defendants Gold and Fabian are similarly liable for providing false information during those proceedings. (*Id.* ¶¶ 70-92).

Finally, in Count XVI of the PSAC, Plaintiff asserts a broad common law conspiracy claim that includes the basic allegations Plaintiff made with regard to her federal RICO count (e.g., bank, payroll, and litigation fraud intended to enrich Defendant Fabian). (*Id.* at Count XVI ¶ 2). Plaintiff also contends that all defendants are liable for conspiring to: (1) "disappear" the 2013 Sun National Bank lawsuit in statements and filings made during the State Court Litigation; and (2) prevent Defendant Laurence Gold's deposition in the State Court Litigation. (*Id.* ¶¶ 3-4). Plaintiff further alleges that proposed Defendant Howard conspired with Fabian about creating "specious affidavits" for submission in the State Court Litigation, and "conspired with Mr. Fabian, and others, to carry about this post-suit scheme." (*Id.* ¶ 5).

Several Defendants opposed Plaintiff's motion for leave to amend. (ECF Nos. 66-1, 68-1, 73, 74, 76). Plaintiff filed reply submissions, (ECF Nos. 78, 80), and this Court conducted oral argument on August 12, 2019. (Tr. of Aug. 12, 2019 Hr'g, ECF No. 89). Following that proceeding, the Court directed the parties to submit supplemental briefing. (Aug. 13, 2019

Order, ECF No. 86).  The parties have done so, (ECF Nos. 90-94), and Plaintiff's motion is now ripe for resolution.

## II.   **LEGAL DISCUSSION**

### a.   **Standard Applicable on Motions for Leave to Amend Under Rule 15**

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave.  Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436 at *2 (D. N.J. March, 08 2017) (quoting Wright & Miller § 1484, at 676).  The Rule directs that the Court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15 (a)(2).  This standard ensures that claims are decided on their merits rather than on mere technicalities.  See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice."  Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion").  The United States Court of Appeals for the Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or

dilatory motive.  Grayson v. Mayview State Hosp., 293 F.3d 103, 107-08 (3d Cir. 2002); see also

Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend

should be granted "unless equitable considerations render it otherwise unjust.").

Defendants do not contend that Plaintiff unduly delayed seeking amendment, that

Plaintiff's proposed amendments would cause any unfair prejudice, or that Plaintiff is acting in

bad faith.  (See generally, Defs. Brs., ECF Nos. 66-1, 68, 73, 91, 92, 93; Tr. of Aug. 12, 2019

Hr'g at 5:8-18, ECF No. 89).  Nor does it appear, from the Court's comprehensive review of the

docket, that such arguments would be applicable here.  The Court will therefore focus its

analysis on Defendants' futility arguments.

**b.**      **Futility Analysis**

A proposed amendment "is futile if the amended complaint would not survive a motion to

dismiss."  County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting

Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314,

1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would

fail to state a claim upon which relief could be granted.'") (internal citation omitted).  Therefore,

"[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion."

Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist.

LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F. 3d

1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153(MAS), 2017 U.S. Dist. LEXIS

74826, *6 (D. N.J. May, 17 2017).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed

amendment is futile, and that, "given the liberal standard applied to the amendment of

pleadings," that burden is a "heavy" one.  Pharmaceutical Sales & Consulting Corp. v. J.W.S.

Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS

46572 at *10.  "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave

to amend is improper.'"  Schiano v. MBNA, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440,

*44 (D.N.J. Feb. 11, 2013) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure §

1487 (3d ed. 2012)).  The Court will evaluate Defendants' futility arguments under these

standards.

### i.      Proposed Count XII – Violation of 17 C.F.R.  § 240.10b-5

Securities and Exchange Commission Rule 10b-5, codified at 17 C.F.R. § 240.10b-5,

provides:

> It shall be unlawful for any person, directly or indirectly, by the
> use of any means or instrumentality of interstate commerce, or of
> the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to
> state a material fact necessary in order to make the statements
> made, in the light of the circumstances under which they were
> made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Plaintiff alleges that Defendant Fabian (as Executor of the late Mr.

Applebaum's Estate) and proposed Defendant Thomas S. Howard, Esq. (as counsel for the

Estate) violated that regulation by filing two "frivolous" applications in the State Court

Litigation seeking to "disinherit" Plaintiff.  (PSAC at Count 1 ¶¶ 318-32; Count XII ¶¶ 2-8, ECF No. 72).  Plaintiff refers to the Estate's August 2017 and October 2018 requests that the probate court authorize the sale of THC stock that would otherwise be due Plaintiff under her late husband's will, on the grounds that Plaintiff's continued presence as a shareholder would damage the company.  (*Id.* at Count 1 ¶¶ 467-68; Count XII ¶¶ 2-8).  The Court understands Plaintiff's allegations to mean that, if the Appellate Division upholds the probate court's decision to grant the Estate's application, Plaintiff will receive a cash distribution in lieu of any shares.

Fabian and Howard argue that Plaintiff's proposed claim fails on multiple grounds, including that Plaintiff has failed to establish a plausible claim for relief under Rule 10b-5, and that Plaintiff's claims are barred under New Jersey's "litigation privilege."  (Def. Br. at 9-11, 14, ECF No 93).  This Court agrees.

First, as the United States Court of Appeals for the Third Circuit has observed, "[t]he Supreme Court has held that only a purchaser or seller of a security has standing to bring a private 10b-5 securities fraud action for money damages."  Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 485 (3d Cir. 1998) (citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)).  Plaintiff here has not alleged that she purchased or sold the security in question.  Rather, she contends that she *would* have inherited it but for Defendants' actions.  Indeed, Plaintiff alleges throughout her PSAC that she has never received any distribution from her late husband's Estate, (*e.g.*, PSAC at Preliminary Statement ¶¶ 38, 57, 63, ECF No. 72), and, in fact, explicitly alleges that she never received the shares in question.  (*Id.* at Count 1 ¶ 309).  Thus, Rule 10b-5 is inapplicable on its face.

While Plaintiff alleges that she qualifies as a "de facto seller" or "forced seller" of THC shares, (*id.* at Count XII ¶ 6), that approach presents its own pitfalls.  Even assuming that courts

would extend Rule 10b-5 to such a situation, the Court finds that Plaintiff's theory would inevitably trigger the "probate exception" to federal jurisdiction.   That exception "is a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789", *Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 226 (2008), and embodies "the general idea that federal courts lack jurisdiction to adjudicate 'probate matters.'"  *Id.*  Interpreting Supreme Court guidance on the breadth of the exception, the Third Circuit has written:

> It is clear after [*Marshall v. Marshall*, 547 U.S. 293, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006)] that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply.

*Id.* at 227.  In order for the Court to apply Plaintiff's "de facto seller" concept, it would have to make a threshold determination that she was entitled to THC shares from Mr. Applebaum's Estate (and thus in a position to "sell" them).  That is a probate function and, this Court finds, would trigger the probate exception.  It would therefore be futile to allow Plaintiff to proceed on such a theory.  Having made these findings, the Court need not consider the parties' other arguments regarding Plaintiff's proposed Count XII.

### ii.        Proposed Count XIII – Breach of Fiduciary Duty

In her proposed Count XIII, Plaintiff contends that Defendant Fabian owed her a fiduciary duty in his role as the executor of Mr. Applebaum's Estate, and that he breached that duty by:  (1) filing motions to "disinherit" Plaintiff, as described above; (2) failing to pay Plaintiff any money from the Estate from 2012 to present; and (3) defaming Plaintiff "in stating that plaintiff is acting out of 'anger', when in reality her concerns stem from the Sun Bank Fraud lawsuit of 2013 as well as other documented instances of fraud…"  (PSAC at Count XIII ¶¶ 1-4).

Defendants argue that that Plaintiff's fiduciary duty claims are barred by the probate exception and/or New Jersey's "litigation privilege." (Def. Supp. Br. at 6-8, 12-15). This Court agrees.

Defendant Fabian's first two alleged breaches are restated challenges to the way in which Fabian administered Mr. Applebaum's Estate. To find that Mr. Fabian failed in those actions would require this Court to usurp the probate court's role. Moreover, to find that Plaintiff suffered any damages as a result of that conduct (e.g., that Plaintiff would have received a different inheritance but for Fabian's alleged actions) would require this Court to probate Mr. Applebaum's Estate. Both would run afoul of the probate exception.

Defendant's third alleged breach is likewise deficient. First, the Court would run into the same "probate exception" issues when calculating any potential damages. More fundamentally, however, Plaintiff has not pled sufficient factual content regarding Defendant Fabian's alleged defamatory statement. Plaintiff contends that Fabian defamed her by stating that she was "acting out of 'anger.'" (PSAC at Count XIII ¶ 4). Plaintiff does not provide any details regarding Fabian's alleged statement, such as when he said it, or who he told. (*Id.* ¶¶ 1-4). Nor has the Court been able to locate details regarding that allegedly defamatory statement elsewhere in Plaintiff's PSAC. While Plaintiff seeks to assert a standalone defamation claim, those allegations concern statements regarding Plaintiff's responsibility for Wells Fargo's decision to deny THC an emergency line of credit, and that Plaintiff would "destroy" THC if permitted to remain involved with the company. (*E.g.*, *id.* at Count III ¶¶ 1-28). Indeed, a search for the word "anger" turns up only one result in Plaintiff's 248-page PSAC: the single reference in Count XIII.

15

The context of Fabian's allegedly defamatory statement is critical.  Based on the other new factual allegations that Plaintiff has included in her PSAC, it appears that Plaintiff may be referencing a position that Defendant Fabian took during the State Court Litigation.  (*See id.* at Count XV).  If that is the case, then Fabian's statements would be subject to New Jersey's litigation privilege.

"'The privilege shields any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'"  *Williams v. BASF Catalysts LLC*, 765 F.3d 306, (3d Cir. 2014) (quoting *Loigman v. Twp. Committee of Twp. of Middletown*, 889 A.2d 426, 437 (N.J. 2006)).  The litigation privilege "functions as a form of civil immunity:  it 'generally protects an attorney [litigant, or representative] from civil liability arising from words he has uttered in the course of judicial proceedings.'"  *Williams*, 765 F.3d at 317 (quoting *Loigman*, 889 A.2d at 333).  "The privilege reflects 'the need for unfettered expression' in adversarial proceedings."  *Id.* (quoting *Hawkins v. Harris*, 661 A.2d 284, 287 (1995)).  In short, "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability."  *Peterson v. Ballard*, 292 N.J. Super. 575, 581, 679 A.2d 657, 659 (App. Div. 1996) (citing *Erickson v. Marsh & McLennan Co., Inc.* 117 N.J. 539, 563, 569 A.3d 793 (1990)).  While often applied in the context of defamation, courts have recognized the privilege as barring a variety of "'tort-related claims.'"  *Williams*, 765 F.3d at 318 (quoting *Loigman*, 889 A.2d at 436).  The privilege is not unlimited, however, as the United States Court of Appeals for the Third Circuit has recognized that it does not extend to "systemic fraud" intended to undermine the judicial process or otherwise "prevent a fair proceeding."  *Id.* at 318.  Similarly, the Third Circuit found

that it would not apply to cases of "malicious prosecution", "criminal perjury", or "claims of spoliation, which concerns a party's conduct and not the party's statements." *Id.* at 319.

To the extent Plaintiff alleges that Defendant Fabian defamed her by making inaccurate statements regarding Plaintiff's "anger" in the context of the State Court Litigation, the litigation privilege would clearly apply. Any such claim would be barred, and it would be futile to include it in an amended pleading. The Court will therefore deny Plaintiff's motion with regard to her proposed Count XIII.

### iii.   <u>Proposed Count XV – Fraudulent Concealment</u>

In her proposed Count XV, Plaintiff alleges that Defendants Fabian and Gold, along with proposed Defendant Howard, are liable for the tort of fraudulent concealment in connection with their activities in the State Court Litigation. (*See generally* PSAC at Count XV, ECF No. 72). To establish a claim of fraudulent concealment in the litigation setting under New Jersey law, a plaintiff must demonstrate:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Rosenblit v. Zimmerman*, 166 N.J. 391, 406-07, 766 A.2d 749, 758 (N.J. 2001); *accord Williams*, 765 F.3d at 320-21. The Court will consider Plaintiff's allegations as to each defendant with these elements in mind.

17

**A.**     **Proposed Defendant Thomas Howard**

Plaintiff devotes the bulk of her proposed Count XV to Mr. Howard's activities as counsel for Mr. Applebaum's Estate, (PSAC at Count XV ¶¶ 1-87), so the Court will begin its analysis with him. As an initial point, the Court notes that Plaintiff does not allege that Mr. Howard "intentionally withheld, altered, or destroyed" any *evidence*. Rather, Plaintiff takes issue with filings, statements, and arguments that Mr. Howard allegedly made during the State Court Litigation, alleging that he knowingly provided inaccurate information. (*Id.*). Specifically, Plaintiff alleges that Mr. Howard:

(1) filed a purported employment agreement between Defendant Fabian and THC in order to conceal THC's "payroll fraud" vis-à-vis Defendant Fabian; (*id.* ¶¶ 10-21);

(2) filed and/or prepared certifications wherein Defendant Fabian sought to refute his previous admissions regarding the "payroll fraud" issue; (*id.* ¶¶ 22-27, 87);

(3) misrepresented whether Sun National Bank had, in fact, filed a lawsuit alleging fraud against THC; (*id.* ¶¶ 28-53, 86);

(4) misled the probate court regarding the status of discovery in the State Court Litigation; (*id.* ¶¶ 54-58);

(5) knowingly misinterpreted and misrepresented the content of certain affidavits and the state of the law when making arguments in the State Court Litigation; (*id.* ¶¶ 59-69); and

(6) made various misrepresentations to both the probate court and the Appellate Division; (*id.* ¶¶ 82-84).

Every one of these instances appears to be the sort of litigation conduct that would be protected under the litigation privilege, as discussed above. Even assuming that it is not, Plaintiff has failed to state a claim for fraudulent concealment. Simply put, plaintiff has not

alleged that she was unable to obtain any of the information Mr. Howard purportedly "withheld" or "altered" from other sources, or that she had to rely on an evidentiary record devoid of appropriate evidence.  Her extensive allegations in this case appear to foreclose her from doing so.

For instance, with regard to the payroll fraud issue, Plaintiff alleged that Defendant Fabian "explicitly admitted the fraud" during a recorded meeting with Plaintiff and her prior counsel in August 2013, (*id.* at Count 1, ¶¶ 425-26), and that former Defendant Capece did the same.  (*Id.* ¶ 135).  Indeed, Plaintiff alleges that Fabian "set forth the scheme in its entirety and in startling detail."  (*Id.* ¶ 137).  If Plaintiff possessed a recorded admission of the "entirety" of the allegedly fraudulent scheme in 2013, how could Mr. Howard hide it from her years later, let alone cause Plaintiff to proceed without critical evidence on that issue?

Similarly, Plaintiff alleges that she has personally known about the Sun National Bank lawsuit since the June 27, 2013 "crisis meeting."   (*Id.* ¶¶47-48).  As would the six others who, Plaintiff claims, attended that meeting.  (*Id.*).  One would also suspect that Sun National Bank would know if it had filed a lawsuit, as would the court in which Sun filed it.  Plaintiff cannot, therefore, plausibly allege that she was unable to reasonably obtain access to information regarding the lawsuit's existence because Mr. Howard made erroneous statements during the State Court Litigation.

Plaintiff's contention regarding Mr. Howard's alleged misrepresentation regarding the status of discovery in the State Court Litigation also fails.  First, the information Mr. Howard allegedly withheld – the true status of discovery in that case – was not "evidence" at all.  Second, Mr. Howard was not the only source of such information.  As Plaintiff alleges, her own attorney

had filed a motion to compel discovery in the State Court Litigation, (*id.* at Count XV ¶ 8), and therefore obviously believed that some discovery remained outstanding.

Plaintiff's argument that Mr. Howard engaged in fraudulent concealment by mispresenting the content of certain affidavits as well as the applicable law is also without merit. Plaintiff does not allege that she lacked access to those affidavits, let alone that Mr. Howard was the only source of their content.  With regard to Mr. Howard's alleged misstatements of law, that is not "evidence."  Nor has Plaintiff alleged that Mr. Howard somehow prevented her from accessing the relevant law.

Finally, the Court turns to Plaintiff's allegations that Mr. Howard made certain misrepresentations to the Chancery Division and Appellate Division.  (*Id.* ¶¶ 82-84).  Plaintiff does not, however, allege that Mr. Howard hid evidence regarding the facts at issue, that Mr. Howard was the only source of such evidence, or that Plaintiff was forced to litigate her case without that evidence.  Plaintiff instead argues that Mr. Howard made misstatements regarding existing evidence.  Such allegations are not sufficient to establish a claim for fraudulent concealment under New Jersey law.

In sum, while Plaintiff has identified several different situations involving Mr. Howard, she has not alleged facts suggesting that *any* of them might support a claim for fraudulent concealment.  The Court will therefore deny Plaintiff's motion to the extent she seeks to add such a claim against Mr. Howard.

### B.    <u>Defendant Gold</u>

Plaintiff alleges that Defendant Gold engaged in fraudulent concealment by:  (1) misrepresenting whether Sun National Bank had filed a lawsuit against THC; and (2) misrepresented to Wells Fargo that THC owed Mr. Applebaum's Estate for the "bailout" loan,

when it actually owed Defendant Fabian.  (*Id.* ¶¶ 78-81).  The former claim fails for the same reasons discussed above in connection with proposed Defendant Howard.  With regard to the latter, Plaintiff has not pled facts establishing how an alleged misrepresentation to a bank at some point in time might constitute the concealment of evidence in a later piece of litigation.  Nor has Plaintiff pled that she lacked reasonable access to information regarding the true source of the "bailout" funds.  Indeed, Plaintiff alleges that she learned that Defendant Fabian would provide those funds as far back as the June 23, 2017 "crisis" meeting.  (*E.g., id.* at Count I ¶ 76).  Plaintiff has therefore not pled a viable fraudulent concealment claim against Defendant Gold.

### C.   Defendant Fabian

 Plaintiff alleges that Defendant Fabian engaged in fraudulent concealment by making various misstatements (first in a certification and then during a deposition) regarding the "payroll fraud" issue.  (*Id.* at Count XV ¶¶ 88-92).  As discussed above in connection with proposed Defendant Howard, Plaintiff has alleged that she has had full details regarding the alleged payroll fraud scheme since August 2013.  Plaintiff has, thus, not pled a plausible fraudulent concealment claim against Defendant Fabian.

### iv.   Proposed Count XIV – Aiding and Abetting Liability

In her proposed Count XIV, Plaintiff contends that proposed Defendant Howard, as well as Defendants Rajs, Gold, Capece, and the "affiant defendants" are liable for "aiding and abetting" Defendant Fabian's alleged breach of fiduciary duty and fraudulent concealment.  (*Id.* at Count XIV ¶¶ 1-13).  Those claims fail on multiple grounds.  First, Plaintiff's claims are barred under the probate exception to the same extent Plaintiff's underlying fiduciary duty claims against Fabian are so barred.  Second, Plaintiff's aiding and abetting claim fails as a mater of law.

The Third Circuit has recognized that "[t]he elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003). As discussed above, Plaintiff has not plead viable claims for breach of fiduciary duty or fraudulent concealment against Defendant Fabian. As Plaintiff has not established that Fabian's alleged actions were "wrongful", her related aiding and abetting claim necessarily fails.

### v.  Proposed Count XVI – Civil Conspiracy

In Count XVI, Plaintiff appears to assert a common law conspiracy claim against all defendants. First, Plaintiff incorporates her existing RICO allegations, and contends that all defendants have conspired to conduct the various forms of fraud discussed therein. (PSAC at Count XVI ¶ 1, ECF No. 72). Plaintiff also seeks to expand that conspiracy to include additional alleged conduct in the State Court Litigation. For instance, referring to Count XV, Plaintiff alleges that all defendants "conspired to 'disappear' the Sun Bank Lawsuit of 2013, and they conspired to misrepresent the nature of Mr. Fabian's payroll scheme." (*Id.* ¶ 3). Plaintiff further alleges – once again citing her allegations in Count XV – that all defendants conspired to prevent Defendant Gold's deposition and other discovery in the State Court Litigation. (*Id.* ¶ 4). Finally, Plaintiff alleges that proposed Defendant Howard conspired with Defendant Fabian "and others" to "create specious affidavits" and otherwise "carry about this post-suit scheme." (*Id.* ¶ 5).

The Court notes that its review on this motion has been limited to Plaintiff's proposed amendments. Questions regarding the sufficiency of Plaintiff's existing allegations are not currently before the Court. Defendants had previously moved to dismiss Plaintiff's First Amended Complaint, (ECF Nos. 53, 54), and the District Court administratively terminated

those motions "to be refiled if appropriate after the determination of Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint." (Jan. 25, 2019 Order, ECF No. 64). The purpose of that Order was to allow Defendants to file, and the District Court to consider, a single motion to dismiss Plaintiff's operative pleading. Defendants have already announced their intention to renew their motion dismiss Plaintiff's existing RICO claims. (*See* Tr. of Aug. 12, 2019 Hr'g at 7:22-24, ECF No. 89) ("But the reason why Your Honor should deny this motion for second amended complaint and then allow us to come back and argue on the motion to dismiss are simply threefold."). To the extent that Plaintiff's proposed common law conspiracy claim is based on the same facts as her previously pled RICO claims, Plaintiff's proposed amendment is largely ministerial. The District Court will have to make determinations regarding that alleged conspiracy regardless of how this Court resolves Plaintiff's motion for leave to amend. For reasons of judicial economy, and so as to avoid burdening the District Court with potentially undesirable findings, the Court will permit Plaintiff to amend her Complaint to add a common law conspiracy claim based on the facts underlying her existing RICO claims. Plaintiff's proposed expansions on that conspiracy claim, however, do not pass muster.

With regard to Plaintiff's claim that Defendants conspired to hide the Sun National Bank Lawsuit from the probate court in the State Court Litigation, she has incorporated her allegations from Count XV. (PSAC at Count XVI ¶ 3, ECF No. 72). In that Count, however, Plaintiff has not alleged sufficient facts regarding any conspiracy. Rather, she contends that both proposed Defendant Howard and Defendant Gold independently and knowingly misrepresented the existence of the Sun National Bank lawsuit. (*See generally id.* at Count XV).

Similarly, Plaintiff has not alleged facts regarding any conspiracy to deprive Plaintiff of discovery in the State Court Litigation. Plaintiff instead alleges that one person, Mr. Howard,

misled the probate court regarding the state of discovery.  (*Id.* ¶¶ 54-58).  Plaintiff then alleges, in sweeping fashion, that "it was Mr. Howard's design to conspire with the co-defendants to prevent [Mr. Gold's ] deposition from taking place."  (*Id.* ¶ 58).  Such conclusory pleading is insufficient.

Finally, Plaintiff alleges that proposed Defendant Howard conspired with Defendant Fabian "and others" to accomplish a "post-suit scheme."  (*Id.* at Count XVI ¶ 5).  Plaintiff provides no specifics as to that conspiracy.  Indeed, it appears that the closest thing to coordinated activity that Plaintiff has identified is that Mr. Howard either prepared or relied upon Mr. Fabian's certifications regarding the payroll fraud issue.  (*Id.* at Count XV at 87).  To the extent Plaintiff bases her conspiracy claim on the fact that an attorney worked with his client representative to prepare documents for filing in the State Court Litigation, that conduct is protected by the litigation privilege.

In sum, Plaintiff's motion is granted to the extent Plaintiff seeks to assert a common law conspiracy claim based on the facts she previously pled in connection with her existing RICO claims.  Plaintiff's motion is denied to the extent she seeks to include the items set forth in paragraphs 3-5 of Count XVI in her conspiracy claims.

### vi.    Gartenberg Howard LLP and Morey La Rue, Inc.

Plaintiff seeks to add Mr. Howard's law firm, Gartenberg Howard LLP, as well as the entity Morey La Rue, Inc., as defendants.  With regard to Gartenberg Howard, Plaintiff has simply alleged Mr. Howard's affiliation with the firm, and asserts that the firm is liable for fraudulent concealment, but has not provided any information as to what the firm itself either did or failed to do in connection with this case.  (PSAC Count 1 ¶336; Count XIV ¶ 13, Count XV ¶ 53, ECF No. 72).  As for Morey La Rue, Inc., Plaintiff alleges that Toben Investments, Inc.

purchased the Linden Property from that entity in 2011, (*id.* at Count 1 ¶ 345, 352), and that Defendant Fabian may have used Morey La Rue as a "shell" to commit "financial crimes." (*E.g.*, *id.* ¶ 7).  Plaintiff does not, however, plead any facts connecting Morey La Rue, Inc. to any of her claims in this matter.  The Court will therefore deny Plaintiff's motion to the extent she seeks to add either Gartenberg Howard LLP or Morey La Rue, Inc. as Defendants.

### vii.   Claims Against Previously Dismissed Defendants

On November 20, 2018, Plaintiff filed a "Notice of Dismissal", wherein she voluntarily dismissed her claims against Voya Financial Services, Inc., Intac Actuarial Services Inc., and Ascensus LLC with prejudice.  (ECF No. 40).  The Hon. Jose L. Linares, U.S.D.J. "So Ordered" Plaintiff's Notice the following day, effectuating that dismissal with prejudice.  Plaintiff has nevertheless asserted claims against those entities in her PSAC.  (PSAC at Count V, Count VI, ECF No. 72).  Those claims, set forth in Count V and Count VI, are the same claims that Judge Linares dismissed with prejudice.  Plaintiff's motion is therefore denied to the extent Plaintiff seeks to reassert such claims against Voya Financial Services, Inc., Intac Actuarial Services Inc., or Ascensus LLC.

Similarly, while this motion was pending, Plaintiff filed a "Notice of Dismissal" regarding Defendant Capece, which the Hon. Kevin McNulty, U.S.D.J. "So Ordered" on December 30, 2019.  (ECF No. 103).  While Plaintiff has not removed her claims against Ms. Capece from the PSAC, the Court believes that this is likely an oversight.  In any event, the Court will deny Plaintiff's motion to the extent it includes claims against Defendant Capece.

### III.   CONCLUSION

Based on the foregoing, Plaintiff's cross-motion for leave to file a second amended complaint, (ECF No. 59), is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's

motion is granted to the extent she seeks to allege additional facts regarding the causes of action previously pled in her First Amended Complaint.  It is likewise granted to the extent Plaintiff seeks to assert a common law conspiracy claim based on the same factual allegations underlying her existing RICO claims.  Plaintiff's motion is denied in all other respects.  Further, the Court specifies that Plaintiff shall remove her claims against the now-dismissed Voya Financial Services, Inc., Intac Actuarial Services Inc., Ascensus LLC, and Leah Capece when filing her Second Amended Complaint.  A appropriate form of Order accompanies this Opinion.


October 30, 2020                                                    **s/ Joseph A. Dickson**
                                                                   **Joseph A. Dickson**
                                                                   **United States Magistrate Judge**