## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **EDITA APPLEBAUM,** | Civ. No. 18-11023 (KM)(JSA) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **WILLIAM P. FABIAN, ET AL.** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Edita Applebaum initiated this action against eleven regular employees and two professional employees of the Todd Harris Company ("THC"). Plaintiff asserts that Defendants conspired to prevent her from inheriting millions of dollars which were due her under the will of her late husband, Todd Harris Applebaum, and that they used the estate's funds for illicit purposes.

On June 25, 2018, Plaintiff filed an eleven-count Complaint asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, violations of the New Jersey Conscientious Employee Protection Act, violations of Title VII, violations of the Employee Retirement Income Security Act, intentional infliction of emotional distress, tortious interference with prospective economic advantage, defamation, retaliation, and negligence. (*See generally* Compl.). Defendants filed a motion (DE 27) to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff filed a First Amended Complaint ("1AC"). (DE 39). Defendants again moved (DE 53) to dismiss and Plaintiff filed a cross-motion (DE 59) for leave to file a second amended complaint.

On January 25, 2019, Judge Jose L. Linares administratively terminated Defendants' motion to dismiss pending the outcome of Plaintiff's cross-motion

1

to amend, and referred that cross-motion to Magistrate Judge Joseph A. Dickson. (DE 64). On March 26, 2019, Judge Dickson found that Plaintiff's Proposed Second Amended Complaint ("P2AC") failed to meet the requirements of Local Civil Rule 15.1(a)(2) and was "rife with formatting" anomalies that made it "nearly impossible for the Court to determine precisely what material Plaintiff [proposed] to add or remove." (DE 70). Plaintiff then filed a second P2AC. (DE 72). The Court held oral argument on the matter on August 12, 2019. (DE 89).

As will be explained in more detail, on October 30, 2020, Judge Dickson granted in part and denied in part Plaintiff's cross-motion to amend. (DE 114, DE 115). Plaintiff now appeals. For the reasons provided herein, I will affirm the Magistrate Judge's well-reasoned decision.

## I.    Summary[1]

Judge Dickson summarized the salient facts in his October 30 decision. I recount them here.

The allegations in the First Amended Complaint focus predominantly on Defendant William Fabian, who was a business associate of Plaintiff's late husband and is the administrator of Mr. Applebaum's estate. (1AC Preliminary Statement ¶66). Plaintiff alleges that Mr. Fabian is "the principal of the RICO enterprise" and "facilitate[d] payment of disputed, undocumented, and potentially illicit 'loans' and 'consulting' fees purportedly owed him by Mr. Applebaum and/or [THC]." (*Id.*).

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint (DE 1)

"1AC" = Plaintiff's First Amended Complaint (DE 39)

"P2AC" = Plaintiff's Prosed Second Amended Complaint (DE 72)

### a. THC's Involvement with Sun National Bank and Wells Fargo Bank

A number of the allegations involve THC's attempt to secure loans from Sun National Bank and Wells Fargo to repay its debts to Defendant Fabian.

Prior to Mr. Applebaum's passing, he was the sole owner of THC. (1AC Count I ¶3). After Mr. Applebaum died, Defendant Frank Rajs became president of the company. (*Id.* at ¶18). Mr. Rajs then "place[d] defendant Fabian on the THC payroll at a rate of two thousand dollars per week." (*Id.*). Additionally, Plaintiff alleges that Mr. Rajs, together with Defendants Fabian and Cecelia Keh, withdrew $420,000 from THC's line of credit with Sun National Bank by forging Mr. Applebaum's signature, to reimburse Mr. Fabian for his previous loans to THC and consulting fees. (*Id.* at ¶¶19-23, 36).

Plaintiff submits that withdrawal "led to a fraud lawsuit" initiated by Sun National Bank against THC. (*Id.* at 20). According to the First Amended Complaint, Sun National Bank initiated its suit on June 25, 2013, alleging that "the very passing of Mr. Applebaum rendered the Sun Bank withdrawals *per se* fraudulent" because his passing "represents an event of default." (*Id.* at ¶¶21-22). Then, on June 27, 2013, THC held a "crisis meeting," which "numerous parties," including Plaintiff and Defendants Gold and Capece, attended. (*Id.*) The First Amended Complaint alleges that the parties "openly discussed more than one conspiracy to commit fraud and they also candidly admitted they had in fact committed fraud in the solicitation of the Sun Bank line of credit." (*Id.*). At that meeting, Mr. Fabian allegedly agreed to provide a nearly $300,000 "bailout" loan secured by "plaintiff's personal guarantee, a lien on THC accounts receivables, and a promissory note executed by THC." (*Id.* at ¶¶44-45).

Also at the crisis meeting, THC personnel, including Defendants Capece and Fabian, decided to apply for an "emergency" line of credit with Wells Fargo Bank, while "deliberately conceal[ing]" Mr. Fabian's $300,000 bailout loan in applying for that line of credit. (1AC Preliminary Statement ¶26). Plaintiff further submits that "the primary purpose in soliciting the quarter-million-

3

dollar 'emergency' line of credit from Wells Fargo" was to repay THC's "indebtedness to defendant Fabian." (1AC Count I ¶113). Ultimately, Wells Fargo denied the loan because, *inter alia*, Plaintiff refused to provide a personal guarantee. (1AC Preliminary Statement ¶29).

### b. Other Allegations of Fraud

In addition to the bank fraud described above, Plaintiff alleges that Defendants misappropriated the proceeds of Mr. Applebaum's 401K and engaged in payroll fraud.

Plaintiff alleges that at the time of his passing, Mr. Applebaum's 401K account contained approximately $100,000, and that, as the surviving spouse, she "was entitled to the full value of the policy unless she signed an express waiver of rights, which she did not." ((1AC Count I ¶¶229-230). The First Amended Complaint further alleges that Defendants Fabian and Keh misappropriated the funds "through false pretenses" by transferring them to Mr. Applebaum's estate. (*Id.* at ¶¶229, 233-236).

Plaintiff also alleges that Defendants engaged in payroll fraud by adding Mr. Fabian to the payroll of THC and Toben Investments, Inc. ("Toben"), a company in which Mr. Applebaum owned a 51% interest. (*Id.* at ¶3) The purpose of this act was to reimburse Mr. Fabian for his "disputed and undocumented decades-old 'loans,' as well as his 'consulting' fees." (*Id.* at ¶213).

### c. Plaintiff's Employment with THC and THC's Alleged Retaliation

Plaintiff alleges that THC hired her in December 2012 "so that she could 'stay connected'" to her late husband. (1AC Count IV ¶¶3-7). Plaintiff "was given no formal assignments or title." (*Id.* at ¶4). During her employment, Plaintiff allegedly engaged in whistleblowing activities regarding fraud and mismanagement within THC. (*Id.* at ¶¶24-25).

THC discharged Plaintiff one year later, on December 4, 2013 (*Id.* at ¶3), allegedly in retaliation for Plaintiff's complaints.[2] (*Id.* at ¶¶ 27-28, 37). The First Amended Complaint submits that a group of "affiant" defendants ("Michael Lackey, Gerald Macko, Derk Schumacher, Jimmy Samayoa, Garrett Applebaum, and Youssef Abdulah Youssef") later colluded with Defendants Capece, Fabian, and Rajs in concocting false affidavits as *post facto* justification for Plaintiff's termination. (*Id.* at ¶¶48-58). Those Defendants stated, *inter alia*, that Plaintiff would "destroy" THC if she remained and that the late Mr. Applebaum "wanted [her] kept away from the company financials." (*Id.* ¶¶ at 11-14, 50).

### d. Allegations involving the "Linden Property"

The First Amended Complaint alleges that Defendants used Toben as a "shell company" to sell a commercial property in Linden, New Jersey (the "Linden Property").

In late 2011, Toben purchased the "lucrative" Linden Property from a company called Morey La Rue, Inc., of which Defendant Fabian had been employed and the alleged "*de facto* owner." (*Id.* at ¶¶343-44, 347). Plaintiff submits that property was "[t]he sole asset once owned by Toben" and was appraised at 1.5 million dollars in 2014. (*Id.* at ¶339). However, after the June 27, 2013 crisis meeting, "Defendants knowingly sold this commercial property under false pretenses, after the appraisal was issued, at approximately one half of the appraised value." (*Id.* at ¶¶340, 375). Plaintiff submits that Defendants used the proceeds of the sale as repayment to Mr. Fabian for the aforementioned loans and consulting services. (*Id.* at ¶¶375-79). Plaintiff further submits that Defendants falsely justified the decision to sell the Linden Property for half its value on the basis that environmental damage would

---

[2]     The First Amended Complaint also alleges that, early on in Plaintiff's employment with THC, the company and its employees "reject[ed]" her due to her gender and ethnicity. (1AC Count IV ¶9). Plaintiff alleges in addition that her termination was partly based on her "failure to participate in the Wells Fargo bank fraud." (*Id.* at ¶43).

render the property unrentable in the future. (*Id.* at ¶¶384-85). The First Amended Complaint alleges that the fraudulent sale caused Plaintiff financial harm because she stands to inherit 51% of Toben's assets. (*Id.* at ¶398).

### e. Allegations involving the "State Court Litigation"

Finally, the First Amended Complaint asserted claims of fraud and other unlawful activities in connection with Plaintiff's pending state court action in the Superior Court of New Jersey, which she filed in March 2014 (the "State Court Litigation").[3]

Since the initiation of the State Court Litigation, which is still in the discovery phase, "[o]ver one dozen depositions have been conducted," "thousands of interrogatories," and "[d]ozens of subpoenas and related discovery devices have produced over thirty thousand documents." (1AC ¶¶238-39). Plaintiff submits that Defendants have attempted to hide evidence by, *inter alia*, using a "frivolous" non-disclosure agreement "to withhold the most significant fraud-related discovery" and "to forestall key discovery regarding fraud"; refusing to comply with discovery request "citing 'privacy' concerns and 'confidential' financial information"; and filing "a frivolous motion, under false pretenses, to quash a lawful subpoena which had been served to obtain the file related to the 'emergency' line of credit from Wells Fargo." (*Id.* at ¶¶258-68).

The First Amended Complaint alleges that Defendants committed "widespread, prevalent, and compelling" perjury throughout the State Court Litigation. (*Id.* at ¶277). The perjury allegedly "consisted primarily of defendant's efforts to conceal from plaintiff, and the Court, the nature of the fraudulent payroll payments [to] Mr. Fabian." (*Id.* at ¶279).

---

[3]     Among other things, Plaintiff requested the removal of Mr. Fabian as the executor of Mr. Applebaum's estate. (1AC Count I ¶241). Thus far, Plaintiff's "various requests" to remove Mr. Fabian have been denied. (*Id.* at ¶ 242).

Finally, Plaintiff submits that Defendants used the State Court Litigation to further their goal of "disinherit[ing]" her in retaliation for her whistleblowing activities. (*Id.* at ¶¶326-330, 403-05).

## II.    Legal Standards

Judge Dixon's decision on the motion to amend boiled down to the application of the ordinary Rule 12(b)(6) standard to the Proposed Second Amended Complaint.

### a.  Appeal of motion to amend

Motions to amend a complaint are considered non-dispositive. *Marinac v. Mondelez Int'l, Inc.*, No. 14-7606, 2019 WL 1767345, at *1 (D.N.J. Apr. 22, 2019) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)). A District Court will reverse a Magistrate Judge's decision on a non-dispositive motion only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law.

*Id.* (alteration in original) (quoting *Bobian v. CSA Czech Airlines*, 222 F.Supp.2d 598, 601 (D.N.J.2002)). The appealing party bears the burden making such showing. *See Sang Geoul Lee v. Won Il Park*, 2015 WL 1523066, at *2 (D.N.J. Apr. 2, 2015). I treat this motion to amend as primarily involving a legal ruling; no evidence or fact finding as such is involved.

Here, Plaintiff appeals Judge Dickson's order granting in part and denying in part her motion for leave to file a second amended complaint. Under Federal Rule of Civil Procedure 15(a)(2), a court should give leave for a plaintiff to amend her pleading "when justice so requires." The Court may deny a motion to amend the pleadings where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) futility of amendment, or (5) repeated failure to correct deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long*

7

*v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004). Because Defendants did not argue grounds (1), (2), (3), or (5) were present, Judge Dickson focused his analysis on the futility of amendment. (DE 113 at 11). A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss" under Rule 12(b)(6). *County of Hudson v. Janiszewski*, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)). I therefore briefly set forth the Rule 12(b)(6) standard applied by Judge Dixon.

### b.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are

accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

### III.   Discussion

In addition to the eleven counts asserted in the First Amended Complaint, Proposed Second Amended Complaint asserts five new claims. I will discuss those five additional claims in turn.[4]

### 1. Proposed Count XII – Section 10b-5

#### i.   Proposed allegations

In Proposed Count XII, Plaintiff alleges that Defendant Fabian and proposed Defendant Thomas S. Howard, Esq., counsel for Mr. Applebaum's estate, violated 17 C.F.R. § 240.10b-5 ("Section 10b-5") by filing "frivolous" applications in the State Court Litigation to "disinherit" Plaintiff. (P2AC Count 1 ¶¶318-32; Proposed Count XII ¶¶2-8). Specifically, Count XII alleges that Defendant Fabian and Mr. Howard attempted to sell Plaintiff's 40% stake in THC, which Mr. Applebaum had devised to her "by way of the residuary clause of his last will and testament."[5] (P2AC Proposed Count XII ¶2).

#### ii.   Judge Dickson's decision

Judge Dickson found that amendment to add the Section 10b-5 claim would be futile for two reasons.

First, relying on the Third Circuit precedent, Judge Dickson concluded that "only a purchaser or seller of a security has standing to bring a private 10b-5 securities fraud action for money damages." (DE 113 at 13 (quoting

---

[4]   As indicated by Judge Dickson, the sufficiency of Plaintiff's existing allegations is not currently before the Court. (DE 113 at 22). His decision was confined to the sufficiency of the claims that were newly alleged in the Proposed Second Amended Complaint

[5]   Plaintiff alleges that in August 2017and October 2018, Mr. Fabian, as executor of Mr. Applebaum's estate, filed verified complaints seeking leave to sell Plaintiff's 40% shares in THC because Plaintiff's continued status as shareholder damages the company. (1AC Count I ¶¶467-68). Plaintiff submits that Mr. Fabian relied on the false affidavits prepared by THC employees as proof that her shareholder status "damages" THC. (*Id.*)

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 485 (3d Cir. 1998)). Here, Plaintiff does not allege that she purchased or sold the stock in question—only that she *would* have inherited it but for Defendants' intervention. (P2AC ¶¶38, 57, 63).

Second, even accepting Plaintiff's theory that she qualifies as a "*de facto* seller" or "forced seller," and assuming that Section 10b-5 applies to such a seller, Plaintiff's theory would trigger the "probate exception" to federal jurisdiction. (DE 113 at 13-14). Relying on *Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 226 (3d Cir. 2008), Judge Dickson concluded that (1) "for the Court to apply Plaintiff's '*de facto* seller' concept, it would have to make a threshold determination that she was entitled to THC shares from Mr. Applebaum's Estate (and thus in a position to 'sell' them)" and (2) such task would require the Court to engage in a "probate function" that triggers the exception. (DE 113 at 14).

### iii. Analysis

The Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Section 10b-5 of the accompanying regulation "make it unlawful to commit fraud in connection with the purchase or sale of a security." *U.S. Small Bus. Admin. v. Katawczik*, 107 F. App'x 281, 285 (3d Cir. 2004)

Section 10b-5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale* of any security.

17 C.F.R. § 240.10b-5 (emphasis added).

In *Blue Chip Stamps v. Manor Drug Stores*, the Supreme Court held that only a purchaser or seller of a security has standing to assert a claim under Section 10b-5 for money damages. 421 U.S. 723, 755 (1975); *Trump Hotels*, 140 F.3d at 485. That case represented the Supreme Court's adoption of the Second Circuit's purchaser/seller rule that was announced long ago in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461(2d Cir. 1952). *Blue Chip*, 421 U.S. at 731; *Trump Hotels*, 140 F.3d at 485. Five years prior to *Blue Chip*, however, the Third Circuit held that "despite the *Birnbaum* rule, Second Circuit jurisprudence allowed a non-purchasing or non-selling plaintiff to bring an action for injunctive relief under 10b–5." *Trump Hotels*, 140 F.3d at 485 (citing *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.1970)). In *Kahan*, the Third Circuit held that

> [n]either the language of § 10(b) and Rule 10 b–5 nor the policy they were designed to effectuate mandate adherence to a strict purchaser-seller requirement so as to preclude suits for [injunctive] relief if a plaintiff can establish a causal connection between the violations alleged and the plaintiff's loss.

*Id.* at 485 (alterations in original) (quoting *Kahan*, 424 F.2d at 173).

In *Trump Hotels*, the Third Circuit expressly left open the question whether *Kahan*'s relaxed-standing rule for injunctive relief survived *Blue Chip*. *Id.* There, the plaintiff, Trump Hotels & Casino Resort, Inc., sought to enjoin the sale of bonds that were to finance construction of a highway near its property, a highway that would benefit the business of a competitor. *Id.* at 484. The plaintiff argued that the issuance of such bonds would violate, *inter alia*, Section 10b-5. *Id.* The Court found the purported causal link between the sale of the bonds and economic injury to Trump Hotels was too attenuated to establish standing. *Id.* at 487. ("Admittedly, there is a highly attenuated connection between the funding scheme and Trump's claimed 'injury'. However, that 'injury' is much too tenuous to be regarded as arising from the

11

alleged securities fraud. The injury results from the highway that will bring traffic to Trump's competitor."). Because Trump Holds was neither a purchaser nor seller, it could not establish standing under *Blue Chip. Id.* at 484. And because the causal link between the alleged securities fraud and the injury was too attenuated, it could not support its claim for injunctive relief under *Kahan. Id.* Thus, the Third Circuit did not need to address whether *Kahan* remains good standing law.

Plaintiff submits that *Kahan*'s relaxed-standing rule survived *Blue Chip* and that she has standing to sue under Section 10b-5 as a beneficiary of Mr. Applebaum's will. (DE 116 at 17-20). In that regard, Plaintiff relies on the Seventh Circuit decision in *Norris v. Wirtz*, 719 F.2d 256 (7th Cir. 1983). There, the Court addressed whether the beneficiary of a trust established a claim under Section 10b-5 "where the actual sales of the securities held in trust were made by the co-executors of plaintiff's father's estate, and not by plaintiff." *Norris v. Wirtz*, 719 F.2d 256, 259 (7th Cir. 1983). The Court held that because "plaintiff's approval was required under the will, plaintiff fits within the contours of the *Birnbaum* rule and has stated a cause of action by alleging misrepresentations 'in connection with' the sale of securities."[6] *Id.* 261.

Assuming *arguendo* that the Third Circuit would adopt *Norris,* that decision would not apply to these facts, for two reasons: (1) it is not clearly alleged that the securities in question were actually sold at all; and (2) it is not clear that Plaintiff had or has any right to object to such sale.

The Proposed Second Amended Complaint vacillates between alleging that Defendants "*attempt*[ed] to disinherit" Plaintiff by filing "frivolous"

---

[6]    The *Norris* Court explained:

The will provisions establishing plaintiff's trust provide that the trustee is generally to have full and unquestioned power to make investment decisions regarding the trust property. But the will does give James Norris' daughter, plaintiff here, the power to approve the sale of any stock in the closely-held corporations beneficially owned by plaintiff when the purchaser is the individual trustee.

719 F.2d at 260.

applications in the State Court Litigation and alleging that Defendants "*succeeded* in selling [her] shares." (P2AC Proposed Count XII ¶¶1-8 (emphasis added)). The distinction is critical because without at least a sale by somebody, Section 10b-5 does not apply. *See* 17 C.F.R. § 240.10b-5.

Further, the Proposed Second Amended Complaint departs from the facts in *Norris* because it does not allege that Plaintiff's approval is required before Defendant Fabian, as executor, can sell THC's shares. In her briefing, however, Plaintiff submits that "New Jersey case law clearly requires a beneficiary's specific objection to in-kind distribution before a fiduciary is allowed to distribute *in-cash*." (DE 116 at 20 (citing *In re the Estate of Hope*, 916 A.2d 469 (N.J. Super. Ct. App. Div. 2007)).

In *Estate of Hope*, the Appellate Division addressed a challenge to an administrator's decision to sell estate property and distribute the proceeds among four heirs where the heirs "requested that the administrator distribute one-half of the property to them in kind." *Estate of Hope*, 916 A.2d at 471. The court noted that the operative will was "silent as to whether distribution shall be in kind or whether the property should be sold and the proceeds distributed in cash." *Id.* at 473. Because there was no express distribution preference, the court examined N.J. Stat. Ann. § 3B:23-3, which "provides that distribution in kind is warranted 'if there is no objection to the proposed distribution and it is practicable to distribute undivided interests[;] otherwise[,] those assets shall be converted into cash for distribution.'" *Id.* (quoting N.J. Stat. Ann. § 3B:23-3; alteration in original). The court concluded that this provision demonstrates New Jersey's "preference for in-kind distributions." *Id.* However, the court made clear that such a preference "does not mean . . . that in-kind distribution is warranted under all circumstances." *Id.* Instead, "if any devisee of a particular asset objects to the in-kind distribution of that asset, distribution in kind of that asset is not required" and "the mode of distribution *is subject to the equitable discretion of the personal representative of the estate*, and ultimately, of the court." *Id.* at 474 (emphasis added).

Thus, contrary to Plaintiff's assertion, *Estate of Hope* does not "clearly" require a specific objection to in-kind distribution before in-cash distribution is permitted. The *Hope* court first looked to the language of the will. Having determined the will did not provide for a specific method of distribution, the court noted New Jersey's preference for in-kind devises. Importantly, however, the court determined that the appropriate distribution method is dependent upon the circumstances. *See id.* Here, the circumstances that would, as Plaintiff would have it, *require* a particular form of distribution are not clearly alleged.

Based on the foregoing, I find the Proposed Second Amended Complaint does not establish a Section 10b-5 claim. Therefore, I will affirm the Magistrate Judge's decision with regard to Proposed Count XII.

Alternatively, Judge Dickson also found that Proposed Count XII would trigger the probate exception to federal jurisdiction. Here, too, I agree.

"The probate exception is a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789." *Three Keys*, 540 F.3d at 226. Jurisdiction conferred by that Act "did not extend to probate matters." *Id.* (internal quotation marks omitted) (quoting *Markham v. Allen*, 326 U.S. 490, 490 (1946)). Interpreting Supreme Court precedent, the Third Circuit laid out the contours of the exception: "unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." *Id.* at 227.

Here, Plaintiff asks the Court to (1) undermine the Probate Court's decision[7] and determine that she is entitled to the THC shares in question pursuant to Mr. Applebaum's will and (2) that she is entitled to prevent the sale of those shares. It is no exaggeration to state that Plaintiff asks this court to

---

[7] The parties have not attached a copy of the Probate Court decision itself. However, Plaintiff submits that she has not received what she regards as her inheritance (DE 116 at 6), and the Probate Court's order is currently being appealed (DE 119 at 31).

probate Mr. Applebaum's will and administer his estate, apparently in contradiction to the state court that is performing those functions. Under the probate exception, the Court is not permitted to do so.[8] *See id.*

I therefore affirm Judge Dickson's ruling that amendment to add Count XII should be denied as futile.

### 2. Proposed Count XIII – breach of fiduciary duty

#### i. Proposed allegations

The Proposed Second Amended Complaint alleges that Defendant Fabian, as executor of Mr. Applebaum's estate, owed Plaintiff a fiduciary duty and breached that duty by: (1) "attempt[ing] to disinherit plaintiff by selling her 40% stake in THC"; (2) "fail[ing] to give plaintiff any monies from [Mr. Applebaum's] estate for six years, from 2012 through present"; and (3) defaming Plaintiff "in stating that [she] is acting out of 'anger,' when in reality her concerns stem from the Sun Bank Fraud lawsuit of 2013 as well as other documented instances of fraud she witnessed (e.g. the payroll fraud)." (P2AC Count XIII ¶¶1-4).

#### ii. Judge Dickson's decision

Judge Dickson found that the first two contentions are barred by the probate exception. (DE 113 at 15). In particular, Judge Dickson concluded that to find Plaintiff suffered damages as a result of the alleged disinheritance "would require this Court to probate Mr. Applebaum's Estate." (*Id.*) Such a finding, he held, would "usurp the probate court's role." (*Id.*).

Regarding the alleged defamation, Judge Dickson also found such claim would run afoul of the probate exception, at least at the stage of calculating damages. (DE 113 at 15). Moreover, he found that the Proposed Second Amended Complaint failed to plead a defamation claim because it does not provide any factual details regarding Defendant Fabian's alleged statement,

---

[8]     Plaintiff argues that the exception should not apply because the Appellate Division and New Jersey Supreme Court denied her request to stay the decision of the Probate Court. (DE 116 at 16; DE 116-7). However, Plaintiff has appealed the Probate Court's decision and that appeal remains pending.

"such as when he said it, or who he told." (DE 113 at 15). And, if, as it appears based on other factual allegations, that Plaintiff is referring to a statement Fabian made in the State Court Litigation, those statements would be subject to New Jersey's litigation privilege. (DE 113 at 16 (citing *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. 2014)).

Plaintiff does not appeal these findings. (*See* DE 116). Finding no error on my independent review, I will affirm Judge Dickson's ruling that amendment to add Count XIII should be denied as futile.

### 3. Proposed Count XV – Fraudulent concealment[9]

#### i. Proposed allegations

Proposed Count XV alleges that Defendants Fabian and Gold, as well as a new proposed Defendant, Howard, engaged in fraudulent concealment of evidence in the State Court Litigation. (*See generally* P2AC Count XV).

With respect to Mr. Howard, the Proposed Second Amended Complaint asserts that he

(1) "knowingly filed a fraudulent employment agreement ('EA') in 2017 and 2018 to conceal defendant Fabian's 600K payroll fraud";

(2) "knowingly filed and/or drafted one or two certifications or affidavits wherein defendant Fabian sought to deny or refute compelling pre-litigation admissions of fraud";

(3) "filed a certification in State Court, signed by him, in which he knowingly explicitly set forth that the pivotal, material, and significant Sun Bank Lawsuit of 2013 was *never filed*";

(4) "once again set forth in an interlocutory appeal brief that the Sun Bank lawsuit was never filed";

(5) "knowingly misrepresented the status of discovery as having been 'completed' in order to forestall key discovery"; and

---

[9]    Proposed Count XIV, which contains an aiding and abetting claim, relates to and is dependent on Count XV. It is therefore more convenient to discuss the substantive claim first.

> > (6) "twice knowingly misinterpreted and misrepresented in State Court the pre-litigation certifications of the 'affiants' . . . by setting forth a factual argument not specifically supported by said certifications."

(P2AC Count XV ¶¶4-9). Plaintiff also asserts that Mr. Howard made various misrepresentations to the probate court and the New Jersey Superior Court, Appellate Division. (*Id.* ¶¶82-84).

Regarding Defendant Gold, the Proposed Second Amended Complaint alleges that he fraudulently concealed (1) his knowledge of the Sun Bank lawsuit and (2) the source of the "bailout" loan when applying for a loan from Wells Fargo. (*Id.* at ¶¶78, 81, 84).

Finally, as to Defendant Fabian, the Proposed Second Amended Complaint alleges that he provided false information, including false testimony, to the state court concerning the alleged payroll fraud. (*Id.* at ¶¶88-92).

## ii.    Judge Dickson's Decision

Judge Dickson held that the Count XV failed to state a claim for fraudulent concealment, and that amendment should therefore be denied. (DE 113 at 18-21).

First, with respect to Proposed Defendant Howard, Judge Dickson found that the complaint fails to allege that he "'intentionally withheld, altered, or destroyed' any *evidence*." (DE 113 at 18). Instead, "Plaintiff takes issue with filings, statements, and arguments that Mr. Howard allegedly made during the State Court Litigation, alleging that he knowingly provided inaccurate information." (*Id.*). And, even if the allegations were not protected by the litigation privilege, Plaintiff failed to state claim for fraudulent concealment because she "has not alleged that she was unable to obtain any of the information Mr. Howard purportedly 'withheld' or 'altered' from other sources, or that she had to rely on an evidentiary record devoid of appropriate evidence." (DE 113 at 18-19).

Regarding Defendant Gold, Judge Dickson found that the allegations failed for the reasons asserted with respect to Mr. Howard. (DE 113 at 21).

Additionally, Judge Dickson noted that "Plaintiff has not pled facts establishing how an alleged misrepresentation to a bank at some point in time might constitute the concealment of evidence in a later piece of litigation." (*Id.*)

Finally, with respect to Defendant Fabian, Judge Dickon found that because Plaintiff alleges that she was aware of and "had full details" regarding the payroll fraud scheme, she cannot establish a fraudulent concealment claim. (DE 113 at 21)

### iii.   Analysis

In *Rosenblit v. Zimmerman,* the New Jersey Supreme Court clarified the elements of the tort of fraudulent concealment. 766 A.2d 749, 757-58 (N.J. 2001). That tort has five essential elements:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Id.* at 758.

Here, fatally, the Proposed Second Amended Complaint does not once allege that Plaintiff could not access the allegedly concealed evidence. Instead, it contains extensive details of the Sun Bank Lawsuit and the "bailout loan" and contains alleged evidence of the payroll scheme—all of which was apparently known to the Plaintiff and could have been introduced in evidence in the state case. (*See generally* P2AC). Because, at all times, Plaintiff was aware of the alleged fraud and had access to the evidence in question, her fraudulent concealment claim must fail. *See Rosenblit*, 766 A.2d at 758.

I will affirm Judge Dickson's ruling that amendment to add Count XV should be denied as futile.

### 4. Proposed Count XIV – Breach of fiduciary duty, aiding and abetting by non-fiduciary defendants

The Proposed Second Amended Complaint asserts an aiding and abetting claim by "non-fiduciary Defendants" Howard, Rajs, Gold, Capece, and the "affiant defendants." (P2AC Count XIV ¶¶1-2). Those Defendants are allegedly liable for aiding and abetting Defendant Fabian in his breach of fiduciary duties and in his fraudulent concealment. (*Id.* at ¶2).

Judge Dickson found that those claims must fail because Plaintiff failed to plead viable claims for breach of fiduciary duty or fraudulent concealment against Defendant Fabian. (DE 113 at 22). Plaintiff does not appeal that determination. (*See generally* DE 116). Finding no error on my independent review, I will affirm Judge Dickson's ruling that amendment to add Count XIV should be denied as futile.

### 5. Proposed Count XVI – Civil conspiracy

#### i. Proposed allegations

Finally, the Proposed Second Amended Complaint adds Count XVI, a claim for civil conspiracy that incorporates Plaintiff's existing RICO allegations, adding the following:

(1) Defendants "agreed, along with defendant Fabian, to engage in the bank fraud, the payroll fraud, and the litigation fraud, with the aim of allowing Mr. Fabian to pay himself his disputed 'off the books' indebtedness, under the guise that they were 'saving' the company – as depicted *inter alia* by the June 27, 2013 'crisis' meeting";

(2) Defendants "conspired to 'disappear' the Sun Bank Lawsuit of 2013, and they conspired to misrepresent the nature of Mr. Fabian's payroll scheme"; and

(3) Defendants "conspired to prevent inter alia the deposition of company account Laurence W. Gold and other discovery."

(P2AC Count XVI ¶¶2-4). The Proposed Second Amended Complaint also alleges that, after Plaintiff filed the State Court complaint, Mr. Howard conspired with Defendant Fabian, "and others," "to create specious affidavits" by denying Defendant Fabian's "prior compelling admissions of payroll fraud." (*Id.* at ¶5).

### ii.    Judge Dickson's Decision

Judge Dickson noted that the sufficiency of Plaintiff's existing claims, including her RICO claim, was not presently before the Court. (DE 113 at 22). In the interest of judicial economy, Judge Dickson permitted Plaintiff "to amend her Complaint to add a common law conspiracy claim based on the facts underlying her existing RICO claims." He declined, however, to allow Plaintiff's "proposed expansions on that conspiracy claim," because the additional allegations of the Proposed Second Amended Complaint either failed to establish a conspiracy or made conclusory allegations. (DE 113 at 23-24).

In particular, Judge Dickson noted that Plaintiff "contends that both proposed Defendant Howard and Defendant Gold independently and knowingly misrepresented the existence of the Sun National Bank lawsuit." (DE 113 at 23). Only one person, however (Mr. Howard) was alleged to have "misled the probate court regarding the state of discovery." (DE 113 at 23-24). Finally, Judge Dickson found legally insufficient the allegation that Mr. Howard "conspired" with others in a "post-suit scheme" because (1) the Proposed Second Amended Complaint provides no specifics to that conspiracy and (2) to the extent that Plaintiff claims a conspiracy existed because "an attorney worked with his client representative to prepare documents for filing in the State Court Litigation, that conduct is protected by the litigation privilege." (DE 113 at 24).

### iii.    Analysis

New Jersey defines a civil conspiracy as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act

20

that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263
(2005) (internal quotation marks omitted) (quoting *Morgan v. Union County Bd.
of Chosen Freeholders*, 633 A.2d 985 (App.Div.1993)).

Here, the Proposed Second Amended Complaint provides no factual
allegations about any agreement among defendants to harm plaintiff or commit
any wrongdoing. (*See generally* P2AC). In Proposed Count XVI, Plaintiff states
in conclusory fashion that Defendants "agreed" to engage in bank, payroll, and
litigation fraud, but provides no facts about that alleged agreement. (P2AC
Proposed Count XVI ¶2). Similarly, Plaintiff states that Defendants "conspired"
to cover up the Sun Bank Lawsuit and to prevent the deposition of Defendant
Gold. (*Id.* at 3-4). Again, however, the Proposed Second Amended Complaint
contains no facts about any such agreement. (*See id.*). Finally, Plaintiff alleges
that Mr. Howard "conspired" with Defendant Fabian "and others" by filing
"specious affidavits." (*Id.* at ¶5). Again, there are no facts about the formation
or existence of any such agreement. (*See id.*).

In briefing, Plaintiff argues that an agreement can be inferred based on
the pleadings relating to Defendants' alleged plan to disinherit her. (DE 116 at
33). A motion to dismiss, however, is addressed to the allegations of the
complaint, and the Proposed Second Amended Complaint does not draw any
such connection. Therefore, I will affirm Judge Dickson's decision to the extent
it found Plaintiff failed to establish a claim for civil conspiracy. I leave
undisturbed the decision to permit Plaintiff leave to seek further amend of the
complaint to assert a common law conspiracy claim based on her existing RICO
allegations.

**6. Proposed Defendants Gartenberg Howard LLP and Morey La Rue, Inc.**

The Proposed Second Amended Complaint adds three proposed defendants: Mr. Howard; Gartenberg Howard LLP; and Morey La Rue, Inc.

Judge Dickson dismissed the claims against Howard, and I have affirmed those decisions. Mr. Howard therefore will not be added as a defendant.

Judge Dickson also declined to allow the addition of the other two defendants. Regarding Gartenberg Howard LLP, Judge Dickson found that "Plaintiff has simply alleged Mr. Howard's affiliation with the firm, and asserts that the firm is liable for fraudulent concealment, but has not provided any information as to what the firm itself either did or failed to do in connection with this case." (DE 113 at 24). Plaintiff does not specifically appeal Judge Dickson's ruling declining to permit amendment to add Gartenberg Howard LLP, which is hereby affirmed.

With respect to Morey La Rue, Inc., "Plaintiff alleges that Toben Investments, Inc. purchased the Linden Property from that entity in 2011," and alleges "that Defendant Fabian may have used Morey La Rue as a 'shell' to commit 'financial crimes,'" but did not "plead any facts connecting Morey La Rue, Inc. to any of her claims in this matter." (DE 113 at 24-25). Plaintiff urges that the Proposed Second Amended Complaint "did plead – or will plead with leave of Court – that shell company [Morey La Rue] is intimately connected to this matter." (DE 116 at 10). In essence, Plaintiff all but concedes that the allegations as currently formulated are insufficient. While it is true that Plaintiff alleges that Morey La Rule was created as a "shell company" used "for the commission of financial crimes" (P2AC Count I ¶7), the Proposed Second Amended Complaint never factually alleges any wrongdoing by the company in connection with the proposed claims. The company is never mentioned with respect to the Section 10b-5 claim, the breach of fiduciary claim, the aiding and abetting claim, the fraudulent concealment claim, or the civil conspiracy claim. (*See* P2AC Counts XII-XVI). I will therefore affirm Judge Dickson's ruling

22

that amendment to add Morey LaRue as a defendant should be denied as futile.[10]

### IV.   Conclusion

For the reasons set forth above, I will affirm the Magistrate Judge's decision. An appropriate order follows.

Dated: April 13, 2021

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**

---

[10]    Judge Dickson also noted that the claims previously dismissed with prejudice against Defendants Voya Financial Services, Inc.; Intac Actuarial Services, Inc; and Acensus LLC, and Defendant Capece remain dismissed. (DE 113 at 25). Plaintiff does not appeal that determination.