## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**EDITA APPLEBAUM,**

>  **Plaintiff,**

>  **v.**

**WILLIAM P. FABIAN, LAURENCE W. GOLD, LEAH E. CAPECE, EFRAIM "FRANK" RAJS, CECILIA KEH, THOMAS D'AMBROSIO, MAXINE MELNICK, MICHAEL LACKEY, GERALD MACKO, DEREK SCHUMACHER, JIMMY SAMAYOA, GARRETT APPLEBAUM, YOUSSEF ABDULAH YOUSSEF, JOHN DOES 1-10, and ABC CORP 1-10, ET AL.,**
>  **Defendant.**

Civ. No. 18-11023 (KM) (JSA)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

This matter originated with the 2012 death of Todd Harris Applebaum, the late husband of the plaintiff, and owner of the companies and properties at issue in this suit. Plaintiff has litigated matters related to Todd Applebaum's estate in state court for nearly a decade. Having achieved no success there, she brought this federal action, in which she accuses defendants, including the estate administrator and various employees of Todd Applebaum's companies, of various crimes and torts. Defendants move jointly to dismiss the Second Amended Complaint. (DE 130.)[1] Plaintiff opposes the motion to dismiss and

---

[1]   Certain citations to the record are abbreviated as follows:

>  DE = docket entry number in this case

>  2AC = Second Amended Complaint (DE 124)

>  Mot. = Defendants' motion to dismiss brief (DE 130-1)

>  Opp. = Plaintiff's corrected brief in opposition to the motion to dismiss (DE 134.)

cross-moves to amend the complaint for a third time. For the following reasons, the motion to dismiss is **GRANTED** and the cross-motion to amend is **DENIED**.

## I.   BACKGROUND

### a.  Todd Harris Company and the Will

Todd Harris Applebaum died testate on November 4, 2012. (2AC at 31.)[2] He was survived by the plaintiff, his wife, and their three children, including their oldest son, Benjamin Applebaum. (App. Op. at 2.) Before his death, Applebaum was the sole owner of the Todd Harris Company ("THC") a pool supply store with approximately 55 employees and, at the time, more than $10 million in annual revenue. (*Id.* at 3; 2AC at 23.) His estate consisted of two other significant assets, a 51% share of Toben Investments, Inc. (the remaining 49% of which was owned by his son Benjamin) and a condominium in New Brunswick. (App. Op. at 3.) Toben's sole asset was a commercial building in Linden, NJ. (*Id.*) In addition, Todd Applebaum had approximately $100,000 in a 401(k) plan, which did not list plaintiff as a beneficiary. (*Id.* at 10.)

Todd Applebaum's will was executed in 2010. It bequeathed 60% of his stock in THC to a trust with the remainder of his assets, including 40% of the stock, going to the plaintiff. (*Id.* at 3–4.) The will explicitly allowed the executor "to sell, convey, mortgage, lease, invest, reinvest, exchange, manage, control, retain or otherwise deal with any and all property, real or personal, comprising [Applebaum's] estate, . . . and *to make distribution under [the] Will wholly or partly in kind or money.*" (*Id.* at 4, emphasis added.) The trust was to be managed for the benefit of plaintiff and her children, and the trustees were

---

App. Op. = Opinion in In the Matter of the Estate of Todd Harris Applebaum Superior Court of New Jersey, Appellate Division, No. A-3948-18, April 22, 2021 (DE 130-3).

Ch. Op. = Opinion in In the Matter of the Estate of Todd Harris Applebaum, Superior Court of New Jersey, Chancery Division-Probate Part, Middlesex County, No. 238799, (DE 130-5)

[2]   I cite page rather than paragraph numbers in the 2AC because the paragraphs are not numbered sequentially. At times I cite to the Appellate Division's opinion for factual matters, because the 2AC is extremely long, repetitive, and confusing.

Benjamin Applebaum and defendants Frank Rajs and William P. Fabian. (*Id* at 3.) Thus, after Todd Applebaum's will was probated, the trust was to be the majority shareholder of THC. The will also named Fabian as executor of the estate. (*Id.* at 4.)

Rajs was a good friend of Todd Applebaum's and a longtime employee of THC. (*Id.* at 3.) Fabian was also a close friend who claims to have loaned Applebaum and THC considerable sums of money over the years and worked as a consultant for THC. (*Id.*) Under a 2010 employment agreement, Fabian was to be paid $2,000 weekly for ten years as a "Business Manager and Consultant" for THC, though he did not receive any pay before Todd Applebaum's death. (*Id.* at 5.) Fabian claimed that the employment agreement was essentially a way for him to be paid back for loans he had made to THC in the 1990s and that at the time of Applebaum's death he was owed $231,700. (*Id.*) The directors ratified the agreement on the advice of Leah Capece, the attorney for THC and the estate. (*Id.* at 6.) The Middlesex County Surrogate admitted the will to probate on December 4, 2012. (*Id.* at 4.) Four days later the shareholders of THC met and the conflicts that eventually resulted in this case began.

At that meeting, which plaintiff attended, Rajs and Fabian were elected directors of THC and Rajs was appointed as president and CEO. (*Id.*) The next day the directors agreed to increase Rajs's annual salary from $100,000 to $150,000 given his new role. (*Id.* at 4–5.) The winter is a slow season for pool sales in New Jersey, and in the months after Applebaum's death Cecilia Keh, THC's controller, requested three separate drawdowns on THC's line of credit with Sun Bank. (*Id.* at 6; 2AC at 32.) This was a problem, however, because the line of credit was personally guaranteed by Todd Applebaum, and his death was an event of default under the agreement. (App. Op. at 6.) Sun Bank claimed that Applebaum's signature had been forged on the documents requesting drawdowns. (*Id*; 2AC at 36.) When it learned of Applebaum's death

3

in June 2013, Sun Bank filed suit against the estate, THC, Rajs, and Keh. (App Op. at 6.)

A special meeting of the board of directors of THC and Toben was held on June 27, 2013 (the "crisis meeting") to discuss the lawsuit. It was attended by plaintiff, Fabian, Benjamin Applebaum, Capece, Laurence Gold (THC's accountant), and Todd Applebaum's mother. (*Id.* at 7.) Capece, the attorney, informed those gathered that success in the lawsuit against Sun Bank was unlikely, but that the bank had agreed to drop the lawsuit if it received a payment of approximately $350,000. (*Id.*) THC did not have that much cash on hand (one reason it had drawn on the line of credit in the first place), so the directors began to search for ways to raise the money, including using Todd Applebaum's life insurance payout and having plaintiff borrow against her home equity. (*Id.* at 7–8.) Fabian eventually agreed to lend THC the $350,000 and the directors agreed to sign a promissory note from THC in exchange for the loan, with plaintiff and Benjamin Applebaum as the guarantors. (*Id.* at 9–10.) Fabian also admitted that his previous loans to THC had been kept off the books, which likely allowed THC to qualify for the Sun Bank line of credit in the first place. (*Id.* at 8–9.) The new promissory note was also kept off the books and not reported when Gold applied for, but did not receive, a line of credit from Wells Fargo for THC. (*Id.* at 22–23; 2AC at 8, 11.)

The estate controlled a 51% share of Toben Investments and Fabian, as the executor, determined, with Benjamin Applebaum's support, that it was in the best interest of the estate to sell the Toben property to raise money for taxes and administrative expenses. The property was sold in October 2013 to its tenant for $800,000. (App. Op. at 9.) From the proceeds of the sale Toben Investments paid Fabian $97,000 (which was the remaining balance on his $350,000 loan to THC), and also lent money to THC to prepare it for the next season. (*Id.* at 14.) Plaintiff complains that the Toben property was sold for less than its true value, characterizing this as a form of self-dealing by Fabian. (2AC

at 120–30.) Applebaum's condominium was sold in February 2017 for $515,000. (App. Op. at 14.)

After the June 27, 2013, crisis meeting, plaintiff, who had no ownership stake in THC, retained counsel, began to question how the business was being run, and also began working at THC full time. (*Id.* at 10.) Plaintiff was fired from her position at THC on December 4, 2013, and was escorted from the property by the police. (*Id.*; 2AC at 14, 172–74.) At some point after plaintiff was fired, Fabian decided to distribute plaintiff's 40% share in THC in cash rather than in kind, proposing to sell the 40% to Benjamin Applebaum. (App. Op. at 24.)

On March 31, 2014, plaintiff filed an eleven-count complaint in New Jersey Superior Court, Chancery Division, Probate Part, Middlesex County (DE 130-4), accusing many of the defendants in this case, including Fabian, Rajs, Gold, and Keh of various torts against THC, including breach of fiduciary duties and fraud. (App. Op. at 11.) In addition, plaintiff accused defendants of various torts against herself, including intentional interference with her inheritance and intentional infliction of emotional distress. (*Id.*) She also accused Fabian of breaching his fiduciary duty by voting to sell the property owned by Toben. (*Id.*) Plaintiff also filed an order to show cause seeking emergent relief to remove Fabian as the executor, to remove Fabian and Rajs as officers of THC and Toben and trustees of the trust and to replace them with herself, to compel Fabian to distribute 40% of THC's stock to plaintiff in kind, and to compel Fabian to distribute 51% of the Toben stock to plaintiff in kind. (*Id.* at 11–12.) That case involved many of the same factual allegations as this one, including the allegations of fraud regarding the Sun Bank line of credit, allegations of payroll fraud related to Fabian's loans and employment agreement, the sale of the Toben property, and intentional infliction of emotional distress. (DE 130-4.)

### b. State Court Rulings

With one minor exception, plaintiff has not prevailed in any of the prior litigation over Todd Applebaum's estate. The Chancery Court, finding that plaintiff did not show a likelihood of success on the merits, denied all temporary restraints and emergent relief. (App. Op. at 12.) In the subsequent years, plaintiff tried repeatedly to achieve her goals of removing Fabian as executor and compelling her 40% share of THC to be distributed to her in kind. (*Id.*) Fabian also filed a complaint seeking to approve accountings of the estate and to approve the sale of the 40% of THC stock to Benjamin Applebaum, with plaintiff receiving the cash value of the shares. (*Id.* at 12–13.) Throughout this process, the Chancery Court repeatedly refused to remove Fabian. (*Id.* at 13.) Plaintiff also alleged that defendants had mismanaged THC and sought control of the company, even though she did not own a majority interest (or, in fact, any interest) in it. (*Id.*) It was during these disputes that Rajs and Fabian submitted affidavits from THC employees praising their management of THC and discussing plaintiff's disruptive behavior while employed at THC. (*Id.* at 14.) Plaintiff alleges that these affidavits were defamatory. (2AC at 25, 156–63.)

In October 2018, Fabian sought approval of his final accounting for the estate. His accounting claimed that 40% of the stock (*i.e.*, 40 shares) in THC had a value of $273,000. Fabian proposed selling Benjamin Applebaum as many of those shares as Benjamin could afford at fair market value, and allowing THC to redeem the remainder of the stock at $6,825 per share. (App. Op. at 15.) After expenses, this left a proposed distribution to plaintiff of $168,504.98. (*Id.*) Plaintiff disputed Fabian's power to distribute the shares of THC in cash rather than in kind, disputed his entitlement to fees, and alleged that the 40% interest should be valued at $1.54 million rather than $273,000. (*Id.* at 16.) Plaintiff also filed a counterclaim alleging that Fabian had breached his fiduciary duty, and soon also moved for the judge's recusal. (*Id.* at 16–17.)

On April 30, 2019, the Chancery Court approved the final accounting. (Ch. Op.) In that decision, the court ruled against plaintiff on every issue,

finding that there was no evidence of fraud by Fabian, dismissing all claims against him and the other defendants, approving the stock sale to Benjamin Applebaum and cash distribution to plaintiff, and closing the estate. (Ch. Op. at 6–8.) Plaintiff's attempts to obtain a stay of the Chancery decision were denied and she appealed to the Appellate Division of the New Jersey Superior Court. (App. Op. at 18.)

In its April 2021 opinion, the Appellate Division summarized plaintiff's arguments as follows:

> She asserts that the Chancery court erred by (1) denying her applications for temporary restraints and injunctive relief; (2) denying her motions to remove the executor; (3) approving the in-cash distribution of the THC shares to the residual Estate; (4) refusing to compel the deposition of Gold; (5) denying her recusal motion; and (6) failing to conduct an evidentiary hearing regarding her exceptions to the executor's final accounting.

(*Id.* at 18–19.) The Appellate Division ruled against plaintiff on all but the last issue, remanding the case to the Chancery for a limited additional hearing on plaintiff's exceptions to the final accounting on issues plaintiff raised, except for the sale of the Toben property and the cash distribution of THC shares. (*Id.* at 33–34.) Importantly, the Appellate Division held that the Chancery Court "properly did not accept plaintiff's contention that there had been a showing of 'clear and definite proof of fraud.'" (*Id.* at 20.) It also found that the Chancery was correct not to remove Fabian because plaintiff's allegations consisted of conjecture, rather than "evidence of fraud being committed by Fabian, or upon anyone, least of all plaintiff." (*Id.* at 23, cleaned up.) The Appellate Division also upheld Chancery's approval of the sale of THC stock to Benjamin Applebaum and the distribution of cash to the plaintiff. The Appellate Division reasoned that the will specifically authorized the executor to "make distribution under the Will wholly or partly in kind or money" and that New Jersey law's general preference for in kind distributions, did not overrule the will's clear grant of discretion to the executor. (*Id.* at 26, citing *In re Estate of Hope*, 390 N.J. Super. 533, 540 (App. Div. 2007).) Plaintiff is in the process of appealing from the

Appellate Division to the New Jersey Supreme Court, but no action has yet been taken on her appeal.[3]

To summarize: Two state courts have rejected plaintiff's claims and found that there was no evidence of fraud against plaintiff on behalf of Fabian, and they have approved of the decisions Fabian made as executor.

### c. Procedural History

Plaintiff filed this case on June 25, 2018, before the Chancery Court or Appellate Division had made the rulings discussed *supra.* Defendants filed a motion (DE 27) to dismiss the original complaint, which was administratively terminated after plaintiff filed a First Amended Complaint in November 2018 (DE 39, 49.) The next month, defendants filed a motion to dismiss the First Amended Complaint, but that too was administratively terminated pending a decision on plaintiff's motion to amend her complaint a second time. (DE 53, 59, 64.) The original version of the proposed Second Amended Complaint ("2AC") was rejected by the court because of formatting issues (DE 58-1, 70), but an acceptable proposed 2AC was submitted and the motion to amend was granted in part by Judge Joseph A. Dickson in October 2020. (DE 72, 113, 114.) Judge Dickson allowed plaintiff to amend her complaint only to the extent of adding a count of civil conspiracy; the remaining proposed amendments were rejected, because the proposed claims were barred by the probate exception, failed to state a claim, or were otherwise futile. (DE 113.) Plaintiff appealed Judge Dickson's decision, but in April 2021 I affirmed it. (DE 120.)

The 239-page Second Amended Complaint was filed on April 22, 2021. (DE 124.) It asserts twelve counts against defendants and seeks millions of dollars in damages. The claims are: 1) Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims with seven predicate acts of

---

[3]      Petition for Certification and Appendix, In The Matter Of The Estate Of Todd Harris Applebaum, Appellate Division Docket No. A-3948-18, New Jersey Supreme Court, May 24, 2021.

racketeering, 2) common law fraud, 3) defamation, 4) claims under New Jersey's Conscientious Employee Protection Act ("CEPA"), 5) conversion, 6) claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 7) intentional infliction of emotional distress ("IIED"), 8) tortious interference with prospective economic advantage, 9) negligence, 10) John Doe Counts, 11) New Jersey RICO, and 12) civil conspiracy.

Although the 2AC pleads all counts against all defendants, it divides the defendants into primary, secondary, and tertiary categories. The primary defendants are William P. Fabian and Laurence W. Gold, who are alleged to be at the center of the conspiracy to disinherit and defame plaintiff. (2AC at 21.) The secondary defendants are Efraim "Frank" Rajs, Cecilia Keh, Thomas D'Ambrosio, and Maxine Melnick, who are alleged to have participated in the conspiracy but were not central to it. (2AC at 21.) Finally, the only factual claims alleged against the tertiary defendants, Michael Lackey, Gerald Macko, Derek Schumacher, Jimmy Samayoa, Garrett Applebaum, and Youssef Abdulah Youssef, who are employees of THC, are for defamation (Count 3) for producing affidavits about why plaintiff was fired. (2AC at 25, 160.)

On June 11, 2021, defendants jointly moved to dismiss the Second Amended Complaint. (DE 130.) Plaintiff filed an opposition and a cross-motion for leave to amend her complaint for a third time. (DE 133.) Defendants filed a reply and opposition to the cross motion to amend (DE 140), and plaintiff filed a final sur-reply (DE 142.) Now, more than nine years after Todd Applebaum's death, this motion is ripe for adjudication.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6)

provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc). Rule 12(b)(6) can serve as the basis for dismissal of time-barred claims. *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010).

"The probate exception is a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789." *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 226 (3d Cir. 2008). As the Supreme Court observed in *Markham v. Allen*, the "jurisdiction conferred by the Judiciary Act of 1789, which is that of the English Court of Chancery in 1789, did not extend to probate matters." 326 U.S. 490 (1946) (citation omitted). The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Specifically, the Third Circuit has held that the exception forbids federal courts only from "endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Three Keys*, 540 F.3d at 227. Final decisions of state probate courts are entitled to the same preclusive effect as any other state court decision. *Hills Dev. Co. v. Bernards Twp. in Somerset Cty.*, 103 N.J. 1, 59 (1986).

## III.   DISCUSSION

I examine plaintiff's claims individually, with the exception of the state and federal RICO claims, which I discuss together. I find that all the claims merit dismissal. Many are time-barred, and others fail to state a claim or are barred by the litigation privilege or probate exception. In addition, I deny

plaintiff's motion to amend her complaint for a third time, as any such amendment would be futile.

### a. RICO (Counts 1 and 11)

The statute of limitations for both federal and New Jersey civil RICO claims is four years. *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004) (citing *Agency Holding Corp. v. Malley–Duff & Assoc. Inc.*, 483 U.S. 143, 156 (1987)); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) (citing *Matter of Integrity Ins. Co.*, 245 N.J. Super. 133, 584 A.2d 286 (1990)); *Lee v. Carabetta*, 2014 WL 4098012, at *8 (N.J. Super. Ct. App. Div. Aug. 21, 2014). A RICO cause of action begins to accrue when a plaintiff "knew or should have known of their injury." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)). This case was filed on June 25, 2018. Thus, if plaintiff knew or should have known of her injury before June 25, 2014, her state and federal RICO claims must be dismissed as time-barred unless the statute of limitations has been tolled.

In her complaint, plaintiff lists seven predicate acts in her "exceedingly complex" RICO case. (2AC at 29–154; Opp. at 4.) As established below, six of those acts clearly occurred before June 25, 2014, and Plaintiff was necessarily aware of them at the time they occurred. The one remaining predicate act, even if it is not time-barred, must be dismissed under the litigation privilege.

The first predicate act focuses on the allegedly fraudulent withdrawals from the Sun Bank line of credit, the raise given to Rajs, and the salary paid to Fabian. These withdrawals and payments took place between November 2012 and June 2013. Plaintiff was aware of these actions, and the resulting lawsuit brought by Sun Bank, at the latest on June 27, 2013, the date of the crisis meeting during which those actions were discussed. (2AC at 31–32.) In addition, allegations regarding the Sun Bank fraud and the payments to Rajs and Fabian were included in the verified complaint filed in the Chancery Court on March 24, 2014. (DE 130-4 ¶ 26–42.) The first predicate act also includes

allegations related to the sale of the Toben property at a price below its market value. (2AC at 40.) That sale took place in October 2013 and allegations regarding the sale were included in the 2014 state court complaint, which was filed on March 31, 2014, outside the limitations period. (DE 130-4 ¶¶ 108–10.) All of the allegedly illegal activity related to the first predicate act occurred before June 25, 2014. Plaintiff was aware of defendants' actions as they occurred, and further alleged that these actions had injured her in her 2014 state court complaint. The claims contained in first predicate act are therefore time-barred.

The second predicate act also focuses on the June 27, 2013 crisis meeting, and alleges that defendants attempted to extort money from plaintiff. (2AC at 42.) Plaintiff alleges as part of this predicate act that the Sun Bank line of credit had been fraudulently obtained by concealing Fabian's loans to THC (*id.* at 45–46), and that the defendants had planned to defraud Wells Fargo to receive a loan (*id.* at 49.) All of the allegations of the second predicate act took place in or before 2013, and many of the same allegations were included in plaintiff's March 13, 2014 state court complaint. (DE 130-4 ¶ 40–42, 142–43.) The second predicate act references no events that took place after 2013, and plaintiff alleged that these actions injured her in her 2014 complaint, proving that she had the necessary awareness at that time. The allegations of the second predicate act are therefore time-barred.

The third predicate act focuses in more detail on the attempt to obtain a loan from Wells Fargo and other banks in 2013. (2AC at 55.) Plaintiff alleges that the purpose of the loans was to repay the $350,000 that Fabian had lent THC, to "the exclusion of Estate debts of higher priority." (*Id.* at 64.) As discussed in the previous paragraph, these events occurred in 2013 and were included in the 2014 complaint, and are therefore time-barred.

The fourth predicate act focuses on the payments to Fabian, which plaintiff alleges constitute payroll fraud. (*Id.* at 67.) The core of this allegation is that payments to Fabian of $2000 per week pay were actually a repayment for

his loans, not compensation for consulting. (*Id.* at 71.) Because THC listed Fabian's compensation as salary rather than loan repayment, plaintiff alleges that THC committed tax fraud. (*Id.* at 80–81.) Fabian began to receive those payments in November 2012. (*Id.* at 73–78.) Plaintiff was aware of the payments by 2013, and they were included in her 2014 state court complaint.[4] (130-4 ¶ 17, 36, 61–72.) The allegations of this predicate act are therefore time-barred.

The fifth predicate act focuses on the alleged theft of Todd Applebaum's 401(k). Plaintiff claims that the money should be hers even though she was not listed as a beneficiary. (2AC at 94–95; App. Op. at 10.) The proceeds of the 401(k) were paid into the estate in April 2013. (2AC at 95.) No facts pleaded in relation to the 401(k) distribution occurred after 2013. Although the alleged theft of the 401(k) was not included in the 2014 complaint, it is clear from the Second Amended Complaint that plaintiff believed herself to be entitled to the 401(k) proceeds in late 2012 or in 2013 at the very latest. (2AC at 94; App. Op. at 10.) The allegations of the fifth predicate act are therefore time-barred.

The seventh[5] predicate act relates to the alleged use of Toben Investments for fraudulent purposes. In essence, the Second Amended Complaint alleges that the sale of the Toben property for $800,000 was fraudulent and used as a vehicle for Fabian to self-deal, with the low price justified by fake environmental concerns. (2AC at 117, 126–29.) Plaintiff alleges that this fraud began in 2010, when Toben purchased the property from Morey La Rue, a dry cleaning company with which Fabian allegedly had a connection. (*Id.* at 118.) In addition, plaintiff alleges that Toben gave a "no show" job to Raj's wife. (*Id.* at 120–21.) Certain of the allegations related to the Toben property were also included in the 2014 state court complaint, and Plaintiff alleges that the sale of the Toben property, agreed to in 2013, actually occurred

---

[4]    Plaintiff also alleges that Fabian perjured himself in his testimony regarding the payments, but that is not relevant to the RICO claim. (2AC at 77.)

[5]    I discuss the sixth predicate below.

in May 2014, which still places it outside of the statute of limitations period. (*Id.* at 130.) Plaintiff was thus necessarily aware of her alleged injury before June 25, 2014. (DE 130-4 ¶ 105-10.) The allegations of the seventh predicate act are therefore time-barred.

Plaintiff claims that the statute of limitations on these (and other) claims should be tolled because of duress, litigation fraud, fraudulent concealment, and the pendency of the state court action. (2AC at 130–38).[6] Those tolling arguments are all unavailing.

"Federal courts may toll statutes of limitations for federal laws where the plaintiff in some extraordinary way has been prevented from asserting his or her rights. But the remedy of equitable tolling is extraordinary, and we extend it only sparingly." *Frasier-Kane v. City of Philadelphia,* 517 F. App'x 104, 106 (3d Cir. 2013) (cleaned up). Under New Jersey law, for duress to toll the statute of limitations requires either a threat or moral and psychological pressure that is "so oppressive under given circumstances as to constrain one to do what his free will would refuse." *Smith v. Est. of Kelly*, 343 N.J. Super. 480, 499 (App. Div. 2001). Here plaintiff only alleges that she participated in high-stakes, stressful meetings about the future of THC. (2AC at 134–38.) She does not allege that any threats against her were ever made or that any of the defendants pressured her not to file the lawsuit. *In fact, she filed a complaint in state chancery court in March 2014 based on many of the same facts as this case.* (DE 130-4.) There is no reason why these federal-court claims, legally distinct but based on the same essential facts, could not also have been filed in 2014, and thus no reason to toll the statute of limitations in this case.

For similar reasons, alleged "litigation fraud" and "fraudulent concealment" do not toll the statute of limitations here. As discussed above, plaintiff was aware of her alleged injuries by early 2014 at the very latest. Even if she was not fully aware of every fact, many facts relevant to the alleged

---

[6]     As discussed below, the litigation fraud predicate act must be dismissed because of the litigation privilege.

litigation-related fraud or concealment were known to her. Disputes over, for example, defendants' motion to quash a subpoena of Wells Fargo had arisen. (2AC at 140; *see also* pp. 15–16, *infra*.) Plaintiff knew of her allegedly retaliatory firing, the alleged fraud on Sun Bank and Wells Fargo, the alleged fraudulent sale of the Toben property, and the alleged theft of the 401(k) proceeds well before June 25, 2014. In short, she was aware of her alleged injury and thus the statute of limitations on these causes of action began to run, irrespective of the alleged concealment of certain of the facts. It is clear from the face of the complaint that the alleged concealment and litigation fraud did not prevent plaintiff from discovering the essentials of her alleged injuries, and therefore do not toll the statute of limitations in this case.

The implication that the pendency of the state court litigation prevented or excused the late filing of this federal action is ineffectual. Indeed, this case *was* filed while the state court litigation remained pending.

Finally, in her brief in opposition, plaintiff claims that her RICO claim was not "perfected" until the final accounting of the estate in 2018 and thus could not have been filed any earlier. (Opp. at 15.) Plaintiff also claims that "the State Court discovery process constituted a grand jury without which no such complex RICO case could be filed." (Opp. at 19.) There is no such "perfection" doctrine in relation to the statute of limitations, and state court discovery has nothing to do with grand juries. Plaintiff's claim began to accrue when she was aware of her alleged injury, in 2014 at the latest. As discussed above, and as demonstrated at length in her complaint, plaintiff was long ago aware that she had suffered her alleged injuries and could sue for them. Indeed, she did sue for them, many years before filing this case. The six RICO predicate claims discussed above are therefore barred by the statute of limitations.

That leaves one RICO predicate claim, the sixth predicate, which involves litigation fraud, and focuses on the actions of Leah Capece. Specifically, Capece's actions allegedly involve NDAs and filing "a frivolous motion, under false pretenses, to quash a lawful subpoena which had been served to obtain the file related to the 'emergency' line of credit from Wells Fargo." (2AC at 101–

02.) In addition, plaintiff accuses defendants of trying to "disinherit" her, *i.e.,* of proposing to distribute her entitlement of THC's shares in cash rather than in kind. (*Id.* at 112-14.) The Second Amended Complaint alleges that

> in August of 2017 and October of 2018 [Capece] filed the affidavits in the State Court as part of a verified complaint, filed *under false pretenses*, in order to frivolously support a non-sequitur, *to wit*, that the plaintiff's non-controlling 40% minority stake in the Todd Harris Company should be sold to a third party as otherwise, they argued, plaintiff would "destroy" the company pursuant to the allegations set forth in the work-related affidavits.

(*Id.* at 114; emphasis in original.) Plaintiff also alleges widespread perjury. (*Id.* at 105–07.) Many of these acts, unlike the others, are alleged to have occurred after June 2014, *i.e.,* within the statute of limitations period.

The litigation privilege does not categorically bar actions taken during litigation from being pleaded as RICO predicate acts. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 WL 2444036, at *4 (D.N.J. June 4, 2013).[7] Plaintiff nevertheless has failed to state a claim with respect to the sixth RICO predicate.

First, litigation fraud and perjury are not listed as eligible predicate racketeering acts under the RICO statute. 18 U.S.C. §§ 1961–64. Second, despite twenty pages of rambling accusations, the Second Amended Complaint does not set forth actual fraudulent activity in relation to these filings; it merely asserts that standard filings in a contested probate case were nefarious. (2AC at 96–116). Third, any claim of liability based on litigation activity in the probate action would be barred by the *Noerr-Pennington* doctrine. That constitutional defense to antitrust and tort liability entails that a party who petitions the government for redress is immune from liability based on such petitioning. *Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965);

---

[7]     In that case, however, the court found that the claims were barred by the *Noerr-Pennington* doctrine. *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 WL 2444036, at *5–*8 (D.N.J. June 4, 2013).

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999). In general, being on the losing side—let alone the winning side—in a contested litigation does not support liability. To that *Noerr-Pennington* defense there is a "sham litigation exception," but it does not apply, for several reasons. To begin with, the probate action was not filed by defendants, and was not a sham because defendants in fact prevailed on the merits. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (holding that a lawsuit is objectively baseless only if "no reasonable litigant could realistically expect success on the merits"). Plaintiff asserts, relatedly, that defendants' actions within the probate action constitute litigation fraud. The First Amendment protects defendants' filings in that action, however, and they cannot be the basis for liability under RICO. *See Cheminor Drugs*, 168 F.3d at 128.

In short, plaintiff's federal and state RICO claims must be dismissed.

### b. Common Law Fraud

A claim of common law fraud under New Jersey law has five essential elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). In addition, Federal Rule of Civil Procedure 9(b) requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The statute of limitations for fraud is six years, and the allegations of fraud fall within the limitations period. *See* N.J. Stat. Ann. § 2A:14-1. I therefore consider the merits.

Nowhere in the Second Amended Complaint does plaintiff allege with specificity that any of the defendants made a material misrepresentation *to her,*

or that *she* relied on any such statement.[8] By her own account, plaintiff was wholly skeptical of the motives and actions of defendants from the beginning; the 2AC alleges that she "suspected rampant fraud" throughout 2013. (2AC at 134.) In the section of the complaint that alleges common-law fraud, plaintiff makes a number of repetitive and irrelevant accusations about bad behavior at THC. (2AC at 154–58.) Nowhere, however, does she point to a specific misrepresentation made by an identified defendant that she reasonably relied upon to her detriment. Indeed, far from relying on any representations by defendants, plaintiff has aggressively contested them. Plaintiff has therefore failed to state a claim for common law fraud, and this count must be dismissed.

### c. Defamation

The statute of limitations for defamation under New Jersey law is one year. N.J. Stat. Ann. § 2A:14-3 ("Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander."). "Publication" of defamatory matter is its "communication intentionally or by a negligent act to one other than the person defamed." Restatement (Second) of Torts § 577(a); *30 River Ct. E. Urb. Renewal Co. v. Capograsso*, 383 N.J. Super. 470, 479 (App. Div. 2006); *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 206 (D.N.J. 2011).

Plaintiff's allegations of defamation stem from the circumstances of her firing in 2013 and the affidavits produced by defendants (including the tertiary defendants) in 2014. (2AC at 156–58.) The publication of these statements is clearly well outside the one-year statute of limitations. Plaintiff alleges, however, that the later attachment of the affidavits to court filings in late 2017 revived her defamation claim. (2AC at 158.) Considered as part of court filings, however, the allegedly defamatory statements are protected by the litigation

---

[8]    Plaintiff alleges that defendants defrauded or attempted to defraud Sun Bank and Wells Fargo. Those alleged frauds, however, did nothing to injure plaintiff and she does not have standing to bring claims based on them.

privilege; they do not constitute new acts of defamation within the limitations period.

The litigation privilege provides complete immunity from liability and grants an absolute privilege to a defamatory statement made in the course of a judicial proceeding, so long as the statement is relevant to the proceeding. *Hawkins v. Harris*, 141 N.J. 207, 213–15 (1995); *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 563 (1990). The court must analyze whether the communication was "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 216 (internal quotation marks omitted). Here, the allegedly defamatory affidavits were attached to filings in the probate lawsuit by defendants and were successfully used to defeat plaintiff's claims in the probate court. Because the submission of the affidavits in 2017 was privileged and therefore not a defamatory publication, and because the original publication of the defamation occurred more than a year before the commencement of this action, plaintiff's defamation claim is time-barred and must be dismissed.

### d. CEPA

CEPA states that "[u]pon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." N.J. Stat. Ann. § 34:19-5. New Jersey Courts have confirmed that, in cases of firing, the accrual date for a CEPA claim is the date upon which plaintiff was actually terminated. *Keelan v. Bell Commc'ns Rsch.*, 289 N.J. Super. 531, 540 (App. Div. 1996) (finding that the date of accrual was the date plaintiff was actually terminated, not the date upon which he was notified that he would be terminated in the future). That is the point at which the one-year CEPA statute of limitations begins to run.

Plaintiff was fired from THC and escorted from the premises by the police on December 4, 2013, more than four years before filing this lawsuit. Her CEPA claim is thus time-barred and must be dismissed.

Plaintiff also brings a wrongful discharge claim (known as a *Pierce* claim), a permissible alternative strategy at the pleading stage. *Rubin v. Sultan Healthcare, Inc.*, 2009 WL 1372272, at *3–*4 (D.N.J. May 15, 2009). The statute of limitations for a *Pierce* claim is more complicated than for a CEPA claim, because an employee allegedly discharged in violation of public policy can proceed on a contract theory, a tort theory, or both. *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980); *Day v. Wells Fargo & Co.*, 2018 WL 1891476, at *2 (D.N.J. Apr. 20, 2018). The statutes of limitations for a *Pierce* claim thus may invoke either of two statutes of limitations: two years for a tort claim and six years for a contract claim. *Lavin v. Bd. of Educ. of City of Hackensack*, 90 N.J. 145, 149 (1982) ("The statute of limitations applicable to a 'recovery upon a contractual claim or liability' is six years." (quoting N.J.S.A. 2A:14–1)); *Montells v. Haynes*, 133 N.J. 282, 292 (1993) (applying two-year personal injury statute of limitations, N.J.S.A. 2A:14–2, to NJLAD claims). Plaintiff's *Pierce* claim is not properly viewed as a contract claim. She does not allege that she had an employment contract of any kind with THC, or that the defendants breached any type of implied contract. Instead, she alleges an abrupt, "immediately known" injury, consisting of being fired and escorted from the premises by the police.

Viewed, as I think it must be, as a personal injury claim, the *Pierce* claim is subject to the two-year statute of limitations, which began to accrue the day she was fired. *Alexander v. Seton Hall Univ.*, 204 N.J. 219, 228 (2010). Because plaintiff was fired from THC in December 2013 and did not file this suit until 2018, her *Pierce* claim is time-barred.[9]

---

[9]    I note in the alternative that even if they were timely, plaintiff's *Pierce* allegations would fail to state a claim. The complaint does not identify the public policy that was allegedly violated by plaintiff's dismissal. *Pierce*, 84 N.J. at 72 ("[A]n employee has a cause of action for wrongful discharge when the discharge is *contrary*

Finally, plaintiff attempts to save her claims from the statute of limitations by alleging a "continuing violation," based on the subsequent proceedings in state probate court regarding distribution of her THC shares in cash rather than in kind. (2AC at 179–82.) This claim, however, is barred by both the litigation privilege and the *Noerr-Pennington* doctrine, both of which, as explained above, disallow actions taken in court proceedings as the basis for civil liability. Plaintiff also alleges in her complaint, without factual support, that various post-discharge acts of defendants should toll the statute of limitations, but she fails to offer a foundation for any such argument.[10] (2AC at 193.) Thus, plaintiff's baseless assertion of a continuing violation cannot save her CEPA and *Pierce* claims

The CEPA/*Pierce* claims are therefore dismissed as time-barred.

### e. Conversion

Under New Jersey law, conversion is "the intentional exercise of dominion and control over chattel." *Meisels v. Fox Rothschild LLP*, 240 N.J. 286

---

*to a clear mandate of public policy.* The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions.") (emphasis added) The reasons that plaintiff lists for her firing are related to internal company policy, not public policy. She states that she complained about a variety of internal company matters, such as THC's reimbursement policy for employee gas usage. (2AC at 169). Such complaints do not amount to whistleblowing under *Pierce* because they do not involve the public good, but rather the financial health of the company. The closest plaintiff gets to alleging whistleblowing related to public policy is her refusal to provide a "personal guarantee" for the allegedly fraudulent Wells Fargo loan. (2AC at 176.) Her complaint, however, does not allege that she was fired for refusing to serve as a guarantor of that loan application, which occurred months before she was fired. Rather, the complaint focuses on plaintiff's internal complaints and alleges that this "digging for dirt" was the reason she was fired, not any reasons related to the Wells Fargo loan application. (2AC at 178.) Similarly, her brief statement claiming that the post-discharge retaliatory actions of defendants violated public policy by seeking to "prevent plaintiff from utilizing the Courts to seek redress" is illogical and cannot form the basis of a plausible *Pierce* claim. (2AC at 193.)

10    Plaintiff does not mention the CEPA/*Pierce* claim in her brief in opposition to the motion to dismiss.

(N.J. 2020). Conversion can be alleged over money if the plaintiff can point to, not just a legal claim for money, but a specific, segregated sum that defendant has wrongfully acquired. *Dougherty v. Drew Univ.*, 2021 WL 1422935, at *10 (D.N.J. Apr. 14, 2021). To state a conversion claim, plaintiff must allege that she maintains the "right to immediate possession" of, as opposed to a mere claim to, the property. *First Nat. Bank of Bloomingdale v. N. Jersey Tr. Co., Ridgewood,* 14 A.2d 765, 767 (N.J. Sup. Ct. 1940).

Here, plaintiff alleges that defendants are liable for conversion because they were aware that the money in Todd Applebaum's 401(k) should have gone to plaintiff, but instead distributed it to the estate. (2AC at 94, 195.) She does not, however, allege that she was listed as the beneficiary on the 401(k) account or that she had any immediate right to the funds for any other reason. (Mot. at 10.) Thus, plaintiff may be alleging a claim that should be satisfied from such funds, but she has not plausibly alleged that she had an immediate right to those particular funds in the 401(k). The claim for conversion is therefore dismissed.[11]

## f. ERISA

Plaintiff makes conclusory allegations that two actions violated ERISA: Fabian's "deferred compensation scheme" and the payment of the 401(k) funds to the estate. (2AC at 196–98.) Plaintiff is not able to demonstrate that she has standing with respect to either claim.[12] Without a concrete, particularized injury that is traceable to the defendant, a plaintiff does not have standing and her claim must be dismissed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiff alleges no injury whatever that is directly related to the nature of Fabian's compensation. Second, as discussed in the previous section,

---

[11]     Whatever right plaintiff may eventually have to the funds under Todd Applebaum's will are not relevant here, as the allegation is that the funds should have been paid *immediately* to plaintiff rather than to the estate.

[12]     In addition, insofar as plaintiff seeks to have this court overturn the decisions of the probate court regarding Fabian's actions as executor, I am barred from doing so by the probate exception.

plaintiff does not allege that she was listed as a beneficiary of Todd Applebaum's 401(k). She had no ERISA rights or legal claim to the funds in the 401k, and she cannot allege that she was injured by the transfer of the funds to the estate. Whatever rights she may have had to the funds *qua* assets of the estate do not implicate ERISA. Therefore, plaintiff lacks standing to bring her ERISA claim, which is dismissed.[13]

### g.  IIED

Plaintiff brings a claim of intentional infliction of emotional distress ("IIED") based on the stressful June 2013 meeting, alleged harassment during her time working at THC, her firing in December 2013, events related to a 2015 deposition, and the attempt to distribute her shares of THC in cash rather than in kind. (2AC at 198–202.) The statute of limitations for IIED is two years, and it begins to accrue when the distress occurred. *Fraser v. Bovino*, 317 N.J. Super. 23, 34 (App. Div. 1998). Thus, all claims related to distress that occurred before June 25, 2016, are time-barred.

The only claim that arose within the limitations period, then, is the claim that defendants intentionally caused plaintiff distress by (successfully) requesting, in the probate matter, to distribute the shares in cash. For the reasons explained in Section III.c, *supra*, claims based on legal filings in that case are barred by the litigation privilege. Insofar as plaintiff seeks to overturn the decision of the Chancery Division approving the distribution of the shares of THC in cash, such a request is barred by the probate exception. In addition, being on the losing end of a judicial decision regarding distribution in cash rather than in kind simply does not approach the level of outrageousness required to support an IIED claim. *See Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366–67, 544 A.2d 857, 863 (1988) (tort requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible

---

[13]     Defendants argue that plaintiff fails to state a claim under ERISA because she has not properly alleged that Keh was a fiduciary of the plan as required by ERISA. (Mot. at 39.) I do not reach this argument, whatever its merits.

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")

Plaintiff's IIED claim must therefore be dismissed.

### h. Tortious Interference

Under New Jersey law, the tort of interference with a prospective economic advantage has four essential elements: "(1) a protectable interest; (2) malice-the defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of a prospective gain; and (4) resulting damages." *D'Agostino v. Gesher LLC*, 2014 WL 7475209, at *5 (N.J. Super. Ct. App. Div. Jan. 7, 2015) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752–53 (1989)). Plaintiff's claim of tortious interference is based on the same underlying events as most of her other claims: the 401(k) funds being paid to the estate, the payments to Fabian from THC, the sale of the Toben property, and litigation fraud.[14] (2AC at 202–04.)

The protectable interest need not be a fully executed contract, because "[t]he law protects also a [person's] interest in reasonable expectations of economic advantage." *D'Agostino*, 2014 WL 7475209 at *5. Even so, plaintiff has not plausibly alleged that she has a protectable interest in the funds from the 401(k), Fabian's payments, or the Toben property. Plaintiff does, of course, have an interest under the will in receiving a portion of the estate's assets. As the Chancery Division held, such rights are subject to the provisions of the will itself, which grants the executor discretion to determine how the estate's affairs are handled. When the will is finally probated, plaintiff will receive a distribution from the estate, but, as discussed *supra*, plaintiff has never had any ownership interest, or any concrete protectable interest, in THC or Toben, and was not the beneficiary of Todd Applebaum's 401(k). Because she has not alleged that she had a protectable interest in the property at issue, plaintiff has failed to state a claim of tortious interference.

---

[14]    The facts pleaded in relation to "litigation fraud," in particular, do not seem to bear any plausible relation to tortious interference. (2AC at 204.)

### i. Negligence

A claim of common law negligence has four essential elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Polzo v. Cty. of Essex*, 196 N.J. 569, 584 (2008). The few facts pleaded in relation to negligence involve the alleged fraudulent drawdowns on the Sun Bank line of credit. (2AC at 205–06.) Plaintiff does not explicitly allege what defendants' duty was or how that duty was breached. The only duty that may plausibly be extracted from the allegations is Fabian's fiduciary duty as executor of the estate, owed to plaintiff as a beneficiary of the estate. *In re Est. of Folcher*, 224 N.J. 496, 511 (2016). The claim that Fabian committed fraud and breached his fiduciary duty, however, has already been reviewed on the merits and rejected by New Jersey state courts. (App. Op. at 20.) Plaintiff is appealing the Appellate Division's decision to the New Jersey Supreme Court, as is her right, but for this court, the Chancery and Appellate Division decisions are final and have both claim- and issue-preclusive effect. *See Hills Dev. Co. v. Bernards Twp. in Somerset Cty.*, 103 N.J. 1, 59 (1986). I am thus bound by the state court decisions finding that Fabian did not breach his fiduciary duty at all, and I therefore must dismiss any claim that he breached it negligently.

### j. John Does

The tenth count of the Second Amended Complaint seems to be no more than a placeholder. It purports to plead all claims against "ABC-Corp 1-10. and John Does 1-10." (2AC at 207.) Because all of plaintiff's claims are being dismissed against all defendants, and no fictitious defendant has been further identified, Count Ten will be dismissed.

### k. Civil Conspiracy

The twelfth and final count in the Second Amended Complaint is for civil conspiracy. New Jersey law defines a civil conspiracy as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement

between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 2005) (internal quotation marks omitted) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 633 A.2d 985 (App. Div. 1993)).

The allegations included in this section of the complaint, however, largely focus on the defendants' alleged conspiracy to conceal facts from the state court regarding whether Sun Bank had actually filed a lawsuit against THC. (2AC at 220–231.) It is difficult to see what relevance this allegation has to any civil conspiracy affecting the plaintiff. It is clear, moreover, as noted by the Appellate Division, that the existence of the lawsuit was not actually concealed from the state court. (App. Op. at 6.) Count 12 will be dismissed for failure to state a claim.

In addition, plaintiff attempts one more time, as part of her civil conspiracy claim, to overturn the decision to allow distribution of the THC shares in cash rather than in kind. (2AC at 231.) As I have noted several times, the probate exception bars this court from overturning that decision of the New Jersey state courts.

### 1. Motion to Amend/ Dismissal with prejudice

Plaintiff moves to amend her complaint for a third time. The proposed changes are minor, primarily related to statute of limitations tolling arguments, and plaintiff has added some illustrative flow charts. (DE 133-1 at 2–5.)

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); *see also Rivera v. Valley Hospital, Inc.*, 2017 WL 916436 at *2 (D.N.J. March 8, 2017). The Rule directs that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This standard ensures that claims are decided on their merits rather than on mere technicalities. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

While district courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Voilas v. General Motors Corp.*, 173 F.R.D. 389, 396 (D.N.J. 1997) (cleaned up). One appropriate reason to deny a motion to amend is futility. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

Here, plaintiff's attempt at amendment is futile. As discussed above, the majority of her claims are barred by the statute of limitations, the litigation privilege, or the probate exception. No amount of artful pleading will circumvent those bars, and the minimal changes of the proposed third amended complaint certainly do not do so. The proposed third amended complaint does nothing to improve plaintiff's meritless tolling arguments. There is no lack of factual content in the complaint; if anything there is too much. Even as supplemented by the motion to amend, it does not add up to a viable claim. Plaintiff's cross-motion to amend her complaint is denied.

The plaintiff responded to this motion to dismiss—as she did two times previously—with a motion to amend the complaint, which I have now denied as futile. That denial sets the scene for the decision whether this dismissal should be entered with or without prejudice.

The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Indeed, where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added); *accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

I have already entertained three motions to amend in this action, which were filed with full knowledge of the defendants' asserted grounds for dismissal. Plaintiff's allegations cannot remain a moving target indefinitely. Further amendment would be futile. As noted above, the majority of the bases for dismissal have already been the subject of unsuccessful attempts to cure, and, by their nature, are not readily curable. After nearly ten years of litigation, there is no reason to think that, given another chance, the plaintiff may amend her way around her failure to state a claim, let alone such formidable barriers as the statute of limitations, *Noerr-Pennington,* or the litigation privilege. This dismissal will therefore be entered with prejudice.

## IV.     CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Second Amended Complaint is GRANTED, with prejudice, and plaintiff's cross-motion to further amend her complaint is DENIED. A separate order will issue.

Dated: December 9, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**